Linda CAVNAR, et al., Petitioners,

v.

QUALITY CONTROL PARKING, INC.,
et al., Respondents.

No. C–3332.

Supreme Court of Texas.

June 5, 1985.

Rehearing Denied Oct. 9, 1985.

O'Quinn & Hagans, John O'Quinn, Houston, for petitioners.

Brown, Sims & Ayre, James D. Wise, Jr., Houston, for respondents.

GONZALEZ, Justice.

This is a wrongful death and survival action. The primary issues are: (1) whether children can recover loss of companionship damages resulting from the death of their parent; and (2) whether prejudgment interest is recoverable in personal injury cases. The court of appeals allowed loss of companionship damages and denied prejudgment interest. 678 S.W.2d 548 (Tex. App.1984). We reverse that part of the judgment denying recovery of prejudgment interest and remand it to the trial court with instructions.

## FACTS

On the night of November 17, 1978, Geraldine Cavnar left a nightclub called The Ritz with her adult daughter, Kathy, and a friend. As they walked across a parking lot toward their car, a van driven by a valet parking attendant hit Mrs. Cavnar, backed over her, and then ran over her a second time before the driver fled. Moshen Kakavand, the driver of the van, was employed by Quality Control Parking, Inc., a company that provided valet parking at The Ritz. Mrs. Cavnar sustained serious injuries which resulted in her death eight days later.

Linda, Kathy and Steve Cavnar (the children of Geraldine Cavnar) and River Oaks Bank & Trust Co. (the administrator of Mrs. Cavnar's estate) joined in bringing this action against Xenon, Inc. (the company that owned The Ritz), Quality Control Parking, Inc., Eugene White (who was affiliated with the valet parking service), and the valet driver who ran over Mrs. Cavnar. Plaintiffs' claims were based on common law negligence, the Texas Wrongful Death Statute (Tex.Rev.Civ.Stat.Ann. art. 4671 [Vernon Supp.1985]), and the Texas Survival Statute (Tex.Rev.Civ.Stat.Ann. art. 5525 [Vernon 1958]). Trial was to a jury, which found that all three defendants and Geraldine Cavnar had committed acts of negligence that proximately caused the accident. The jury attributed negligence to each of the parties as follows:

| | |
|---|---|
| The Ritz | 18% |
| Quality Control and Eugene White | 40% |
| The valet driver | 37% |
| Geraldine Cavnar | 5% |

The jury found that Kathy Cavnar sustained $175,000 in damages for "loss of affection, comfort, companionship, society, emotional support and love in the *past* and which in reasonable probability she would have received in the *future*," and $100,000 in damages for "mental suffering, in the *past* and which in reasonable probability she will suffer in the *future*" (emphasis

added). The jury further found that Linda and Steve Cavnar had each sustained $75,000 in past and future damages for loss of affection, etc., and $50,000 in past and future damages for mental anguish, and that each of Mrs. Cavnar's children sustained $25,000 damages for past and future loss of services, advice, counsel and pecuniary contributions.

In addition, the jury found that:

(1) Mrs. Cavnar suffered pain and anguish before her death entitling her estate to $20,000;

(2) Mrs. Cavnar incurred reasonable and necessary hospital and medical expenses totalling $20,000;

(3) Mrs. Cavnar's estate incurred reasonable funeral and burial expenses totalling $3,000; and

(4) the conduct of Quality Control and White constituted a heedless and reckless disregard of the rights of others, for which the jury assessed $1,000,000 in exemplary damages.

The trial court rendered judgment on the verdict for plaintiffs but refused to award loss of companionship damages and prejudgment interest. However, the trial court stated in its judgment that it would have allowed recovery for loss of companionship and prejudgment interest if such damages had been recoverable under Texas law.

The court of appeals:

(1) reversed and rendered the portion of the judgment that denied recovery for loss of companionship damages; and

(2) found that the evidence was legally insufficient to support the jury finding of Mrs. Cavnar's negligence, and therefore reversed and rendered the portion of the judgment that reduced the damages awarded by the 5% comparative negligence of Geraldine Cavnar.

In all other respects, the court of appeals affirmed the trial court's judgment.

Plaintiffs appeal the denial of prejudgment interest. The only defendants who

appeal are Quality Control and White. Even though the court of appeals reached the proper result on the loss of companionship issue, we address it because of the significance of this issue.

## LOSS OF COMPANIONSHIP AND MENTAL ANGUISH

■ Plaintiffs requested and the trial court submitted proper issues concerning the loss of companionship and mental anguish suffered by each child. The trial court nevertheless refused to award loss of companionship damages because at that time they were not recoverable. Quality Control contends that the Cavnar children are not entitled to recover damages for the mental anguish and the loss of companionship they suffered as a result of their mother's death. We disagree.

Before 1983, Texas applied the pecuniary loss rule as the measure of damages for the death of a child. This rule was abolished in *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983). *See also Madisonville Independent School District v. Kyle*, 658 S.W.2d 149, 150 (Tex.1983). This court said in *Sanchez* that "injuries to the familial relationship are significant injuries and are worthy of compensation." 651 S.W.2d at 252. There is no logical reason to treat an injury to the familial relationship resulting from the wrongful death of any family member enumerated in Tex.Rev.Civ.Stat. Ann. art. 4675 (Vernon 1952) differently than an injury to such relationship resulting from the wrongful death of a child. We therefore hold that the Cavnar children were entitled to recover damages for mental anguish and loss of companionship resulting from the death of their parent.

## PREJUDGMENT INTEREST

The Cavnars challenge the refusal of the lower courts to permit recovery of prejudgment interest on the amount of damages awarded by the jury. We find merit in part of the Cavnar's argument.

■ The term "interest" encompasses two distinct forms of compensation: inter-

est as interest (*eo nomine* ) and interest as damages. Interest as interest is compensation allowed by law or fixed by the parties for the use or detention of money. 1 R. McDonald, *Texas Civil Practice in District and County Courts* § 1.11 (rev.1981). Interest as damages is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *See* McCormick, *Damages*, § 50 (1935).

In *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex. 1978), this court recognized two separate bases for the award of prejudgment interest: (1) an enabling statute and (2) general principles of equity.[1] Since no statute controls the award of prejudgment interest in personal injury cases, the Cavnars must rely upon equitable considerations in order to prevail on their prejudgment interest claim.

 The primary objective of awarding damages in civil actions has always been to compensate the injured plaintiff, rather than to punish the defendant. W. Keeton, et al, *Prosser and Keeton on the Law of Torts* § 2 (5th ed. 1984). A law that denies recovery of prejudgment interest frustrates this goal. If a judgment provides plaintiffs only the amount of damages sustained at the time of the incident, plaintiffs are not fully compensated. They have been denied the opportunity to invest and earn interest on the amount of damages between the time of the occurrence and the time of judgment.

Perhaps the lower courts would have relied upon the equitable ground of recovery set forth in *Stahl* had they not believed that the award of prejudgment interest was foreclosed based on *dicta* in *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (Tex. 1897), and its progeny. *Watkins* involved

a suit on a contract to recover money allegedly due for services and rental of boats. The court permitted the recovery of prejudgment interest but stated that "[i]nterest ... cannot be allowed upon damages arising from assault and battery, libel and slander, seduction, false imprisonment nor for personal injuries and the like." *Watkins*, 40 S.W. at 12.

The *Watkins* court justified its refusal to allow prejudgment interest in this class of cases because the measure of damages was not fixed at any particular time and because the jury was given considerable latitude in determining the amount of recovery in such cases. This limitation is echoed in Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1985), which, by its terms, applies only to ascertainable sums. Later cases also rely on the *Watkins dicta* in denying recovery of prejudgment interest. *See Texas & N.O.R. Co. v. Carr*, 91 Tex. 332, 43 S.W. 18 (1897); *Hutton v. Burkett*, 18 S.W.2d 740, 741 (Tex.Civ.App.—Eastland 1929, writ ref'd); *State v. Weller*, 666 S.W.2d 362, 363 (Tex.App.—Houston [14th Dist.]), *writ ref'd n.r.e. per curiam*, 682 S.W.2d 234 (Tex.1984) (citing *Hutton v. Burkett* ). However, the court in *Watkins* recognized that an award of prejudgment interest is necessary in order to fully compensate an injured plaintiff.

It is objected in this case that interest is a creature of the statute, and cannot be allowed upon unliquidated damages. It is true that interest, strictly speaking, exists only by statutory law, but it is likewise true that courts have recognized the fact that compensation for detention of that which is due on account of injury inflicted is an element of damages necessary to the complete indemnity of the injured party.... In the case of *Heidenheimer v. Ellis*, 67 Tex., [426] on page 428, 3 S.W. [666] 667, the court said: "It

---

**1.** The court in *Stahl* relied upon the "elemental equitable principle" that a defendant "ought not to be able to use someone else's money as it pleases ... thereby enjoying a very considerable benefit, and then pay nothing for the use of the money." *Stahl*, 569 S.W.2d at 485. *Accord State v. Phillips*, 470 P.2d 266, 274 (Alaska 1970); *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 469, 562 P.2d 1, 16 (1977), *cert. denied*, 434 U.S. 876, 98 S.Ct. 228, 54 L.Ed.2d 156 (1977), *reh. denied*, 440 U.S. 931, 99 S.Ct. 1272, 59 L.Ed.2d 489 (1979); *Busik v. Levine*, 63 N.J. 351, 358, 307 A.2d 571, 575 (1973).

is frequently said in the decisions of the courts that interest is the creature of the statute. In a certain sense this is true, but as applied to one class of cases the phrase is misleading. Interest cannot be allowed eo nominee unless expressly provided for by statute, but in many instances it may be assessed as damages when necessary to indemnify the party for an injury inflicted by his adversary, though the statute be silent upon the subject."

40 S.W. at 11–12.

The *Watkins* court based its decision on the assumption that interest under that name was not recoverable unless provided for by statute. 40 S.W. at 11. Courts in subsequent cases therefore attempted to circumvent this limitation by allowing recovery of prejudgment interest under the guise of damages. However, the distinction between interest as damages and interest as interest was abolished in *Stahl* where the court stated:

> Our holding that Stahl is entitled to legal interest on that portion of his money which was held in suspense and used by Phillips is a mere extension of the equitable principles announced in *Watkins* and *Heidenheimer*. The only difference is that we treat interest for the use of money under these circumstances as an equitable exception to the "interest *eo nomine*" rule. In such cases, *it is permissible but no longer necessary to continue the round-about method of allowing indemnity under the name of damages measured by the legal rate of interest.*

(Emphasis added). 569 S.W.2d at 486–87. Thus, prejudgment interest is recoverable regardless of whether it is characterized as damages or as interest.

The rule set forth in *Stahl* actually was not a significant departure from the line of cases following *Watkins.* In an effort to fully compensate injured plaintiffs, the courts of this state have eroded the *Watkins* limitation on prejudgment interest until the distinction between claims in which the damages are or are not fixed and ascertainable has become forced and artificial. Plaintiffs have been permitted to recover prejudgment interest on both liquidated and unliquidated claims in both contract and tort disputes. *See, e.g., Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc.,* 603 S.W.2d 193, 200 (Tex.1980) (broken contract); *Ewing v. Wm. L. Foley, Inc.,* 115 Tex. 222, 280 S.W. 499, 504 (1926) (lost profits and injury to goodwill); *Miles v. Royal Indemnity Co.,* 589 S.W.2d 725, 736 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (property damage); *Maxey v. Texas Commerce Bank of Lubbock,* 571 S.W.2d 39, 51 (Tex.Civ. App.—Amarillo 1978), *writ ref'd n.r.e. per curiam,* 580 S.W.2d 340 (Tex.1979) (breach of fiduciary duties); and *Panhandle & Santa Fe Railway Co. v. Montgomery,* 140 S.W.2d 241, 249 (Tex.Civ.App.—Amarillo 1940, no writ) (injury to cattle). As these cases demonstrate, the fact that the amount of damages is uncertain, disputed and therefore unliquidated has not barred recovery of prejudgment interest in any except personal injury cases. The distinctions drawn between these cases and personal injury cases are illogical because the measure of recovery for damages in a personal injury action is no more uncertain and unliquidated than that in many other tort and contractual disputes where prejudgment interest has been allowed.

The rationale underlying the distinction between liquidated and unliquidated damages as a basis for awarding or denying prejudgment interest has even been criticized by the Supreme Court of the United States.[2] The time has come to re-

---

2. It has been recognized that a distinction, in this respect, simply as between cases of liquidated and unliquidated damages, is not a sound one. Whether the case is of the one class or the other, the injured party has suffered a loss which may be regarded as not fully compensated if he is confined to the amount found to be recoverable as of the time of breach and nothing is added for the delay in obtaining the award of damages. Because of this fact, the rule with respect to unliquidated claims has been in evolution ..., and in the absence of legislation the courts have dealt with the question of allowing interest according to their con-

vise the prejudgment interest rule to make injured parties whole and restore equity and symmetry to this area of the law. We therefore hold that, as a matter of law, a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages *that have accrued by the time of judgment.* To the extent that other cases conflict with this holding, they are overruled. Prejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex. Rev.Civ.Stat.Ann. art. 5069–1.05 § 2 (Vernon Supp.1985).[3] In addition to achieving full compensation, awarding prejudgment interest in personal injury cases at a rate close to the market rate will also serve to expedite both settlements and trials.[4] It will remove the current incentives for defendants to delay as long as possible without creating incentives for plaintiffs to delay. These considerations were recognized by the 5th Circuit in *Domangue v. Eastern Air Lines, Inc.,* where the court held:

A potential award of pre-judgment interest advances the objective of encouraging speedy compensation to victims, and ensures that the aim of obtaining a high recovery for victims and their survivors is not defeated by a defendant's simple strategy of delaying payment or judgment until the award is diminished in actual value. We agree with the Supreme Court of New Jersey's reasoning in *Busik v. Levine* that the allowance of prejudgment interest on an unliquidated tort claim will induce prompt defense consideration of settlement possibilities. 63 N.J. 351, 307 A.2d 571, *app. dism'd,* 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). It is also likely to discourage delay if the case is taken to court.

722 F.2d 256, 264 (5th Cir.1984).

*Accrual of Prejudgment Interest*

We recognize that damages are typically incurred intermittently throughout the prejudgment period. This fact complicates the award of prejudgment interest because a plaintiff is not entitled to recover prejudgment interest on damages until those damages have actually been sustained. Until that time, the plaintiff has not lost the use

---

ception of the demands of justice and practicality. *Miller v. Robertson,* 266 U.S. 243, 258 [45 S.Ct. 73, 78, 69 L.Ed. 265 (1924) ]. "The disinclination to allow interest on claim of uncertain amount seems based on practice rather than theoretical grounds." Williston on Contracts, vol. III, § 1413.
*Funkhouser v. Preston Co.,* 290 U.S. 163, 168–69, 54 S.Ct. 134, 136, 78 L.Ed. 243 (1933).

3. Article 5069–1.05 provides in pertinent part:
Sec. 2. Except as provided in Section 1 of this article, all judgments of the courts of this state earn interest at the rate published by the consumer credit commissioner in the Texas Register. The consumer credit commissioner shall compute on the 15th day of each month the judgment interest rate by taking the auction rate quoted on a discount basis for 52–week treasury bills issued by the United States government as published by the Federal Reserve Board on the most recent date preceding the date of computation. The interest rate so computed shall be the judgment rate, except that if the rate so computed is less than 10 percent, the judgment interest rate shall be 10 percent, and if it be more than 20 percent, the judgment interest rate shall be 20 percent. The rate established on the computation date shall be the interest rate on judgments for the next calendar month.

4. A survey of prejudgment interest law in other jurisdictions shows that the laws vary as to types of actions included within the scope of the law, the date interest begins to accrue, the rate of interest and other factors. For example, some states make the award of prejudgment interest a matter of right. Still others make the award discretionary and based on contingencies such as the ratio of the award to settlement offers. Others provide that the court may suspend the award of prejudgment interest in exceptional cases. Some states allow recovery of prejudgment interest on pecuniary damages only. Most of the states that allow prejudgment interest do so by legislative enactment. *See* Comment, *The Availability of Prejudgment Interest in Personal Injury and Wrongful Death Cases,* 16 U.S.F.L.Rev. 325 (1982). This article lists, in a footnote on page 340, 14 states and their respective authority for permitting prejudgment interest in personal injury and wrongful death cases. *See also* The Institute for Civil Justice, The Rand Corporation, *Jury Awards and Pre-Judgment Interest in Tort Cases,* Appendix A–2 (1983) for reference to an additional 12 states that allow prejudgment interest in personal injury cases.

of the money he ultimately receives from the defendant.

Yet a system which would force litigants to determine precisely when each element of a plaintiff's damage award was incurred would impose an onerous burden on both the trial bench and bar. We therefore adopt a method of calculation that, in our opinion, fairly compensates the plaintiff and avoids the difficulty of accruing prejudgment interest.

A few jurisdictions allow recovery of prejudgment interest as of the date the cause of action accrues. This approach, however, does not preserve the integrity of the principle that prejudgment interest is not meant to punish defendant's misbehavior, but to achieve full compensation for plaintiffs. Rather, it overcompensates the plaintiff by awarding interest on losses not yet incurred. While any accrual method is admittedly arbitrary, the method we adopt more closely approaches the goals underlying prejudgment interest compensation than would accrual as of the date the cause of action arises.

(1) *Damages Suffered by a Plaintiff (Wrongful Death and Non-Death Personal Injury Actions)*

■ In wrongful death and non-death personal injury cases, interest shall begin to accrue on both pecuniary and non-pecuniary damages from a date six months after the occurrence of the incident giving rise to the cause of action.

(2) *Damages Suffered by a Decedent Prior to Death (Survival Actions)*

■ In survival actions such as this one, the decedent typically sustains both out-of-pocket and non-pecuniary losses. However, the accrual problem is not critical in

these cases because all of the decedent's damages must necessarily have accrued by the time of death or shortly thereafter. We therefore allow interest to accrue on the decedent's total damage award as of the date of death. In most cases, this method of calculation will yield the largest interest award. If, however, the decedent lingers for more than six months after the date of the occurrence that gave rise to the cause of action, interest shall begin to accrue from a date six months after the cause of action accrues. In other words, the decedent's estate is entitled to prejudgment interest either from the date of death or six months after the injury-causing incident occurred, whichever yields the larger interest award.

*Punitive—Future Damages*

■ Plaintiffs also contend that they are entitled to prejudgment interest for punitive damages and future damages. We disagree. Commentators are virtually unanimous in advocating that prejudgment interest not be awarded on future damages and punitive damages. *See, e.g.,* Comment, *Pre-Judgment Interest as an Element of Damages: Proposed Solutions for a Colorado Problem,* 49 U.Colo.L.Rev. 335, 355 (1978); Comment, *Allowance of Interest on Unliquidated Tort Damages in Pennsylvania,* 75 Dick L.Rev. 94 (1970); Comment, *The Availability of Prejudgment Interest in Personal Injury and Wrongful Death Cases,* 16 U.S.F.L.Rev. 349 (1981); Comment, *Prejudgment Interest—Too Little, Too Much, or Both?,* 10 U.C.L.A.—Alaska L.Rev. 233 (1981); McCormick, *Damages* § 56 (1935).[5]

■ Punitive damages are intended to punish the defendant and to set an example to others. *Pace v. State,* 650 S.W.2d

5. A problem of overcompensation arises if the plaintiff can collect prejudgment interest on future damages discounted to present value as of the date of trial. If the trier of fact discounts future damages to the date of the incident, then an interest factor should be used to convert the damages from a date-of-incident value to a date-of-trial value. A more direct way to achieve the same result is to discount future damages only

to the date of trial. No interest factor is then necessary for the future damages since the present value calculation expresses those damages in date-of-trial dollars. It thus becomes apparent that prejudgment interest on future damages evaluated as of the trial date would result in overcompensation to the plaintiff.

Comment, *Prejudgment Interest: Survey and Suggestion,* 77 Nw.U.L.Rev. 192, 219 (1982).

64, 65 (Tex.1983). They are assessed over and above the amount of damages necessary to indemnify the plaintiff. The plaintiff can thus be made whole even if prejudgment interest is not awarded on punitive damages. The plaintiff is likewise unharmed by the defendant's retention of future damages prior to trial since these damages are, by their very nature, unaccrued. We therefore limit recovery of prejudgment interest to accrued damages. *See Wyatt v. Penrod Drilling Co.,* 735 F.2d 951, 955 (5th Cir.1984).

Some assert that it would be preferable for the legislature to promulgate a definitive plan aimed at solving the many problems plaguing this area of the law rather than to attempt to judicially resolve the issues on a case by case basis. However, we have judicially awarded prejudgment interest in certain cases and denied it in others. It is, therefore, both necessary and appropriate for us to modify this area of the law in order to eliminate the existing inequities.

In this case, the Cavnar children failed to segregate their accrued damages from their future damages. The constituent elements of their damage recovery were: (1) past and future loss of companionship, etc.; (2) past and future mental suffering; and (3) past and future loss of services, etc. and contributions of a pecuniary value. Thus, the Cavnar children were awarded damages for both their past and their future losses in lump sums. Since they did not tender special issues segregating past losses from future losses, they are not entitled to recover prejudgment interest on those elements of damages.

However, all damages relating peculiarly to Geraldine Cavnar were necessarily accrued, since she died long before trial. We therefore reverse the judgment of the court of appeals only to the extent it denies recovery of prejudgment interest on the damages awarded by the jury for Geraldine Cavnar's medical, hospital, funeral and burial expenses and for the pain and mental anguish she suffered prior to her death.

The judgment is remanded to the trial court in order that the amount of prejudgment interest may be computed in conformity with this opinion. We further hold that the court of appeals did not commit reversible error in its disposition of the other points of error.

Our holding in this case applies to all future cases as well as those still in the judicial process involving wrongful death, survival and personal injury actions.

CAMPBELL, J., concurs with opinion.

I concur with the court that prejudgment interest should be allowed. However, I disagree with the part of the court's holding that allows prejudgment interest to be compounded daily. There should be one rule for determining prejudgment interest and post-judgment interest. I would hold that prejudgment interest, as allowed in this cause, be computed the same as post-judgment interest as provided in Article 5069–1.05.

ON MOTION FOR REHEARING

KILGARLIN, Justice, dissenting.

I respectfully dissent from two aspects of the court's decision as to prejudgment interest in wrongful death causes of action. First, having concluded to allow prejudgment interest in wrongful death cases, no good policy reason or legal basis exists for delaying the commencement date of interest to six months following the occurrence giving rise to the wrongful death cause, but allowing it to run from the date of death in survival causes of action. Second, to allow prejudgment interest on only some damages resulting from a wrongful death is a retreat from well established Texas precedent.

If a right to recover prejudgment interest exists at all, "the measure of recovery is fixed by the conditions existing at the time that the injury is inflicted." *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 660 (Tex.1979). While adequate policy reasons may exist for delaying the commencement of prejudgment interest

for personal injuries not resulting in death, no good policy reason exists for differentiating between survival and wrongful death causes of action. If anything, the recipients of wrongful death damages sustain their greatest loss at the time of death, whereas medical expenses, lost wages, physical pain and mental anguish resulting from a non-death injury are often spread over the duration of the injury. Common sense tells us that the pain, agony, and suffering growing out of the loss of a loved one is greatest at the time of death, and diminishes with the passing of time. Loss of financial support by the dead loved one, loss of care, comfort and guidance, all start at the time of death rather than waiting six months for their inception. If a six month delay is an arbitrary, but acceptable, compromise for the commencing of prejudgment interest in other personal injury cases, it is at least supported by the knowledge that medical expenses and lost wages frequently occur for periods commencing sometime after the date of injury and it would be an onerous burden on the trial court to try to render prejudgment interest from the date that each item of expense accrued. This justification for compromise, however, does not exist in wrongful death suits.

Secondly, I dissent from the holding of the court which abandons the concept that in wrongful death causes of action, all damages are fixed and determinable as of the time of death. Accordingly, no distinction should be made in respect to interest on wrongful death damages existing before trial and those accruing after trial. As was said in *Richardson v. Holmes*, 525 S.W.2d 293, 299 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.), "[t]he cause of action of wrongful death and the recoverable damages are established at the time of death. Dobbs, *Remedies* § 8.6 at 568 (1973); 87 A.L.R.2d 252 (1968)." Indeed, this concept of the fixing of damages at the time of death has prevailed at least since this court gave clear expresssion to the proposition that evidence of remarriage was inadmissible in a wrongful death case. *Gulf C. & S.F. Ry. Co. v. Younger*, 90 Tex.

387, 38 S.W. 1121 (1897). Even though Tex.Rev.Civ.Stat.Ann. art. 4675a has, since 1973, made the fact of remarriage admissible in a wrongful death action, it did not change the rule that all wrongful death damages are established as of the date of death. *See Exxon Corp. v. Brecheen*, 519 S.W.2d 170 (Tex.Civ.App.—Houston [1st Dist.]), *rev'd on other grounds*, 526 S.W.2d 519 (Tex.1975).

Without prejudgment interest, a gross disparity will exist between the recovery of a plaintiff who receives trial and judgment the day after injury and the recovery of a plaintiff who must wait several years until receiving judgment. *Carlton v. H.C. Price Co.*, 640 F.2d 573 (5th Cir.1981). Full compensation for the plaintiff's injuries, however, is but one of the widely accepted rationales for allowing prejudgment interest. Promotion of settlement and prevention of unjust enrichment are also important functions of this type of award.

The defendant has had full investment use of all of plaintiff's money prior to a final judgment—not just the money plaintiff recoups up until judgment date. Consequently, the defendant has earned interest that the plaintiff would have earned had the award been paid immediately upon death. Requiring the defendant to surrender the interest as well as the judgment amount does not punish the defendant; it merely requires the defendant to make the plaintiff whole by surrendering the award and the interest which the plaintiff could have earned had the award been paid at the time of death.

Texas courts ... realize that the right to interest is a marketplace concept and that the use of the money is a mercantile privilege which should not go uncompensated.... [The defendant] cannot be heard to say that it is fair and equitable that it should enjoy such a financial advantage for so long, and pay not a cent for it.

*Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 370 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975). Prejudgment interest prevents the

defendant from profiting from delays in proceeding to trial. If a defendant will only be liable for prejudgment interest on part of an award, then it would still be to the defendant's advantage to delay judgment to obtain interest from those sums on which the court will not award prejudgment interest. Thus, full compensation of an injured party, prevention of delay and unjust enrichment and encouragement of settlement all support a recovery of prejudgment interest on the full award of damages in wrongful death cases.

Because I feel that prejudgment interest should be awarded on *all* except exemplary damages from the date of the incident giving rise to both wrongful death and survival cases, I dissent from this part of the court's opinion.

RAY and ROBERTSON, JJ., join in this dissenting opinion.