**James R. BRINDZA, et ux, Tracie Brindza, as Next Friend of Holly Brindza, Appellants,**

**v.**

**MOBIL OIL CORPORATION, Appellee.**

**No. 09–89–297 CV.**

Court of Appeals of Texas, Beaumont.

Jan. 10, 1991.

Alto V. Watson, III, Reaud, Morgan & Quinn, Beaumont, for appellants.

Michael R. McGown, Weller, Wheelus & Green, Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

The plaintiffs below, James and Tracie Brindza, individually, and also as the next friend of Holly, complained of the Mobil Oil Corporation and Mobil Corporation, defendants, in their plaintiffs' second amended petition. In this pleading, it was spelled out that on or about July 29, 1987, James R. Brindza was working as an electrician, employed by the Allied Electric Company. The following allegations were also pleaded. He and his employer were business invitees on premises owned and controlled by the two named defendants. On that day while James was working on the first floor of Power Plant Number 3 at the Mobil facility in Jefferson County, he fell and sustained extremely serious bodily injuries which were permanent in nature.

These severe injuries were alleged to have been a direct result and were proximately caused by the negligence of the named defendants in several different particulars; one of which was to the effect that the defendants had failed to instruct him in the necessary safety procedures to follow in order to do his work without serious risk of injury to his person. This same pleading spelled out that Holly, the daughter, was caused to suffer severe mental anguish and emotional distress in the past and will continue to do so in the future for an indefinite period of time. Holly also sustained and suffered a loss of consortium, of society, love, care, guidance, and counsel from her injured father, alleging further that these matters were evidenced by an order appointing a Permanent Guardian over the person and Estate of James Richard Brindza, Ward.

The order appointing a Permanent Guardian set out that James, the Ward, was unable to properly execute mental functions necessary to the normal course of living and that he was and is completely and totally incapacitated. The order is attached to and made a part of the pleadings as an exhibit. The guardianship of James is styled: *In re: Guardianship of James Richard Brindza, Non Compos Mentis.* We sanguinely determine and hold that these pleadings, which were dismissed when the defendants leveled certain special exceptions, should not have been stricken in toto. These special exceptions were granted by the trial court and the daughter's entire cause of action was severed out. The instant appeal was perfected from the granting of the special exceptions.

■ The Appellants candidly conceded that this appeal in this Court was seeking to establish a new cause of action which allowed a child to recover damages for loss of consortium and other elements of damages when a child's parent is terribly and severely injured, but not killed through the

alleged negligence of a third party which negligence was the proximate cause of the severe and permanent personal injuries. This pleaded-for relief on behalf of Holly is realistically the sole ground of error and the singular issue in this appeal. On our oral submission date, *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex.1990) had not been decided.

We hold that the appeal in this alleged cause of action is controlled and governed by *Reagan v. Vaughn, supra*, which was authored by Justice Gonzalez. In *Reagan*, the Supreme Court stated that it was presented with the issue of whether a child has the right to recover damages for loss of consortium and mental anguish when a parent of the said child is injured but not killed by the tortious conduct of a third party.

David Reagan became involved in an affray or a fight with another person, being a patron of K–Jacs Saloon located in Pasadena, Texas. The affray or fight took place in the saloon's parking lot. During the affray, the manager of the bar, Mr. Lester Vaughn, struck Reagan on the head with a baseball bat. David Reagan suffered severe brain damage and now functions, according to the opinion, at the level of a six or seven year old child. Thereafter, Reagan and his minor daughter, Julia, sued Vaughn as well as certain co-owners of the saloon. The jury found that Vaughn and the two co-owners were each 20 percent negligent, totalling 60 percent. The jury found that Reagan was 40 percent negligent. The jury then awarded damages in the amount of $2,432,000 to Reagan and $405,000 to Julia. Julia's award was broken down as follows: $200,000 for loss of parental care, nurture and guidance; $25,000 for past mental anguish; and $180,000 for future mental anguish.

The Supreme Court stated that injuries to the familial relationship are significant injuries and are worthy of compensation. *Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex.1983). *Sanchez* recognized and established that a parent has the right to recover damages for the loss of companionship and society resulting from the death of a child.

*Id.* at 254. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551 (Tex. 1985), held that a child has the right to recover damages for the loss of companionship and society resulting from the death of a parent. The Supreme Court reemphasized its previous recognition of the significance of injuries to the familial relationship. The Court, with admirable reasoning, wrote in substance that the common law is not frozen or stagnant, but evolving, and this evolution of the common law must be recognized as a duty of the high court. The Court wrote:

> We would be hard pressed to say that a serious, permanent and disabling injury to a parent does not potentially visit upon the child an equally serious deprivation. In the present case, Julia Reagan has been deprived of essentially any opportunity for further parent-child exchange with her father. A child faced with Julia's circumstances can no longer experience the joy of shared experiences with her parent, and she is denied the care, guidance, love, and protection ordinarily provided by her parent. There is no principled reason to accord the parent-child relationship second class status....

The Court approved the following language from *Villareal v. State*, 160 Ariz. 474, 774 P.2d 213, 217 (1989):

> While all family members enjoy a mutual interest in consortium, the parent-child relationship is undeniably unique and the wellspring from which other family relationships derive. It is the parent-child relationship which most deserves protection and which, in fact, has received judicial protection in the past. (Citations omitted).
>
> The loss of a parent's love, care, companionship, and guidance can severely impact a child's development and have a major influence on a child's welfare and personality throughout life.

Our Supreme Court then unequivocally held that the obvious and unquestionable significance of the parent-child relationship compels a full recognition and establishment of a cause of action for loss of parental consortium in favor of the child. But

the high court took a different approach concerning the recovery of damages for mental anguish as distinguished from parental consortium.

A cause of action for negligent infliction of mental anguish damage is separate and distinct from a child's cause of action for loss of parental consortium and this loss of parental consortium does not include the element of mental anguish. The cause of action for the loss of parental consortium is derivative of the parent's claim for his or her personal injuries. Hence, to enable the child to recover, the child must demonstrate that the defendant or defendants involved are liable for the personal injuries suffered by his or her parent. Therefore, any defense that tends to constrict or exclude or limit the defendants' liability to the injured parent will have the same effect and result upon the child's consortium action. *Reagan, supra.*

The Supreme Court then distinguished the cause of action for negligent infliction of mental anguish, reasoning that the same is not based upon the wrongful death statute. Mental anguish damages require that the child-plaintiff prove that he or she, among other necessary elements, was located at or near the scene of the accident and that the mental anguish itself was a result of a direct emotional impact upon the child-plaintiff. The impact must result from the direct sensory and contemporaneous observance and witnessing of the occurrence, as distinguished from learning of the accident from other sources at some period of time after the occurrence.

In summary, the Court in *Reagan, supra*, held that the child may recover for such nonpecuniary damages as loss of the parent's love, affection, protection, emotional support, services, companionship, care, and society. The factors and elements of proof that the jury may consider in determining the amount of damages properly include, but are not necessarily limited and restricted to, the severity of the injury to the parent and its actual effect upon the parent-child relationship. The child's age, the nature of the child's relationship to the parent, the child's emotional and physical characteristics, and other consortium giving relationships being available to the child may also be considered. *Villareal, supra.*

As of and on December 19, 1990, Justice Doggett authored a concurring and dissenting opinion wherein he dissented from the denial of recovery for mental anguish damages in behalf of Julia. Justices Ray and Mauzy joined with Justice Doggett in this opinion. We have no quarrel with Justice Doggett's rationale. But we are constrained to heed and follow the majority opinion. We have not had the opportunity to read the dissents of the Chief Justice and Justice Hecht which, we understand, are to be filed later.

We necessarily reverse the judgment and order entered below and remand the cause of action for a trial consistent and harmonious with *Reagan v. Vaughn, supra.*

REVERSED AND REMANDED.