SISTERS 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-173-CV





SISTERS OF CHARITY OF THE INCARNATE WORD


d/b/a ST. EDWARD HOSPITAL,



 APPELLANT


vs.





ORLIA CHARLES DUNSMOOR AND JANICE DUNSMOOR,




 APPELLEES



 




FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT



NO. 21,569, HONORABLE ROBERT STEM, JUDGE PRESIDING



 





 Orlia Charles Dunsmoor and Janice Dunsmoor (the "Dunsmoors") brought suit
against the Sisters of Charity of the Incarnate Word d/b/a St. Edward Hospital ("Hospital") and
three doctor-defendants to recover for injuries Mr. Dunsmoor received as a result of medical
treatment at St. Edward Hospital. The doctor-defendants settled before trial, leaving the Hospital
as the sole defendant. After a two-week trial, the jury returned a verdict in favor of the
Dunsmoors, and the district court rendered a final judgment. The Hospital now files this limited
appeal complaining that the district court erred in its calculation of the final judgment award. 



 FACTUAL AND PROCEDURAL BACKGROUND


 The Dunsmoors, husband and wife, filed their original petition in this cause on
October 14, 1988. In the petition, Mr. Dunsmoor claimed that he was injured as a result of
medical treatment he received from the three doctor-defendants while a patient at St. Edward
Hospital. 

 Nearly a year later, on October 20, 1989, the Dunsmoors settled all claims against
the doctor-defendants. The doctors agreed to pay the Dunsmoors $302,000.00 in cash and
purchase an annuity which would pay Mr. Dunsmoor $850.00 per month for life, increasing by
three percent compounded annually, with a guaranteed term of at least thirty years. At trial, the
annuity was evaluated at $170,816.00.

 In order to reduce the amount of damages recoverable at trial, the Hospital elected
a dollar-for-dollar credit for the Dunsmoors' settlement agreement with the doctor-defendants. 
See Tex. Civ. Prac. & Rem. Code §§ 33.012(b)(1), .014 (Supp. 1992). This election was timely
made in writing before the case was submitted to the jury. After approximately two weeks of
trial, the jury returned a verdict against the Hospital in the amount of $703,800.00.

 The district court used the verdict amount as a starting point from which to
calculate the final judgment. Prejudgment interest on the entire jury verdict of $703,800.00 was
calculated at ten percent simple interest per annum from October 14, 1988, (date suit filed) to
October 20, 1989, (date of settlement agreement). This amount was added to the jury verdict for
a total sum of $774,758.47. Then a credit of $472,000.00 (value of the total settlement
agreement) was subtracted from $774,758.47 as of the settlement date October 20, 1989, and
simple interest of ten percent per annum on the balance of $302,758.47 accrued until March 14,
1991 (date of final judgment). On March 14, 1991, the district court rendered the final judgment
in favor of the Dunsmoors for a total of $345,144.66. Postjudgment interest was to accrue on this
final judgment amount at the rate of ten percent per annum, compounded annually, from the date
of final judgment until the date actually paid.

 On March 26, 1991, the Hospital filed this appeal and, on April 12, 1991, paid the
Dunsmoors $278,768.52 in partial satisfaction of the judgment. This appeal is limited to the
amount of credit given for the settlement with the doctor-defendants, the amount of prejudgment
interest awarded, and the amount of postjudgment interest awarded.



PREJUDGMENT INTEREST


 Interest has been defined in Texas as "the compensation allowed by law for the use
or forbearance or detention of money." Tex. Rev. Civ. Stat. Ann. art. 5069-1.01(a) (1987 &
Supp. 1992). The Texas Supreme Court has defined prejudgment interest as "that interest
calculated on the sum payable to the plaintiff from the time of his loss or injury to the time of
judgment." Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 116 (Tex. 1979).



1. Prejudgment Interest at Common Law

 Texas courts have long held that prejudgment interest "is recoverable as a matter
of right where an ascertainable sum of money is determined to have been due and payable at a
date certain prior to judgment." Id. at 116. The law establishing this "right" to recover
prejudgment interest originated in the 1897 Texas Supreme Court decision of Watkins v. Junker,
40 S.W. 11, 12 (Tex. 1897), which held that "if interest be properly an element of damages in
any case, then it be so as a matter of law." 

 In dicta, however, the Watkins court stated that "interest, . . . cannot be allowed
upon damages arising from assault and battery, libel and slander, seduction, false imprisonment,
nor for personal injuries and the like." Id. at 12 (emphasis added). The court's justification for
excluding those cases from prejudgment interest accrual was twofold. First, the measure of
damages in personal injury cases was not fixed at any time before trial, and second, the jury had
a wide discretion in determining damages, making such awards too uncertain to serve as a basis
for interest recovery. Id. at 12. Therefore, under Watkins, prejudgment interest was not
recoverable in personal injury cases.

 For eighty-eight years, Texas courts followed the Watkins dicta concerning
prejudgment interest. Then, in Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex.
1985), the Texas Supreme Court overturned Watkins and held that prejudgment interest is
recoverable in personal injury, wrongful death and survival action cases. See generally Don W.
Cloud, Jr., Note, Cavnar v. Quality Control Parking, Inc.: Prejudgment Interest Is Now
Recoverable In Personal Injury, Wrongful Death and Survival Action Cases, 38 Baylor L. Rev.
385 (1986). The Cavnar court stated that "[p]laintiffs have been permitted to recover prejudgment
interest on both liquidated and unliquidated claims in both contract and tort disputes," making "the
distinction between claims in which the damages are or are not fixed and ascertainable . . . forced
and artificial." Cavnar at 553. Furthermore, stated the Cavnar court, "the measure of recovery
for damages in a personal injury action is no more uncertain and unliquidated than that in many
other tort and contractual disputes where prejudgment interest has been allowed." Id. 

 Since no statute controlled the award of prejudgment interest in personal injury
cases, the Cavnar court followed the holding in Phillips Petroleum Co. v. Stahl Petroleum Co.,
569 S.W.2d 480 (Tex. 1978). In Phillips Petroleum, the Texas Supreme Court abandoned the
distinction between interest eo nomine and interest as damages, stating that prejudgment interest
could be awarded based on equitable principles as an exception to the "interest eo nomine" rule. 
Id. at 486-87. The Cavnar court followed these equitable principles and reasoned that a judgment
award without prejudgment interest would not fully compensate a plaintiff since the opportunity
to invest and earn interest on the amount of damages between the time of the occurrence and the
time of the judgment would be lost. Cavnar, 696 S.W.2d at 552. 

 The Cavnar court held that "a prevailing plaintiff may recover prejudgment interest
compounded daily (based on a 365-day year) on damages that have accrued by the time of
judgment." Id. at 554. The interest rate on those damages accrued at the prevailing rate that
existed on the date judgment was rendered, and the starting date for accrual was "six months after
the occurrence of the incident giving rise to the cause of action." Id. at 554-55. However, the
Cavnar court did not extend prejudgment interest to future damages since they were unaccrued
before trial, or to punitive damages since they were intended to punish instead of compensate. 
Id. at 555-56. If a plaintiff failed to segregate past and future damages, the Cavnar court held
that prejudgment interest was not recoverable on either element of damages. Id. at 556. 
 

2. Statutory Prejudgment Interest

 Since 1985, Texas courts have often cited to Cavnar with few limitations or
distinctions. The most comprehensive change to the Cavnar decision came not through case law
but through legislative reform. In 1987, the Texas Legislature passed a comprehensive package
of legislation, commonly known as "tort reform." Joseph Sanders and Craig Joyce, "Off to the
Races": The 1980s Tort Crisis and the Law Reform Process, 27 Hous. L. Rev. 207, 213 (1990). 
One part of this legislation added section 6 to article 5069-1.05, which had previously focused
primarily on postjudgment interest. Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6 (Supp. 1992). 
Section 6 codified, modified, and overturned portions of Cavnar. 

 The Texas Legislature codified Cavnar by mandating recovery of prejudgment
interest in personal injury, wrongful death, and property damage cases. Tex. Rev. Civ. Stat.
Ann. art. 5069-1.05, § 6(a) (Supp. 1992). However, the amended statute (1) shortened the time
period for which prejudgment interest could accrue. Instead of six months after the incident, as
established by the Cavnar court, the commencement date for the accrual of prejudgment interest
was changed to the 180th day after receipt of written notice of a claim by the defendant or the
filing date of the suit, whichever occurs earlier. Id., Cavnar, 696 S.W.2d at 554-54. The
prejudgment interest statute changed from daily-compound to annual-simple interest, tolled accrual
for settlement offers made in writing, and allowed the trial court discretion as to accrual or
nonaccrual of prejudgment interest during periods of trial delay. John T. Montford & Will G.
Barber, 1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil
Justice System (pt. 1), 25 Hous. L. Rev. 59, 105 (1988). Further, the scope of prejudgment
interest was expanded beyond past damages, as set out in Cavnar, to include those future damages
awarded in the judgment. Montford & Barber, supra, at 103.

 During the 1987 session, the Texas Legislature did not directly address the effect
of accepted settlements on prejudgment interest. The legislature did, however, enact statutes that
focused on settlement offers, which are helpful in interpreting the legislative intent in this
particular area.


DISCUSSION AND HOLDING


 The prejudgment interest statute and section 33.012 (2) of the Civil Practice and
Remedies Code (the "comparative responsibility" statute) became effective September 2, 1987,
and the legislature provided that these statues would apply to actions commenced on or after this
effective date. Since the Dunsmoors filed their original petition on October 14, 1988, these
statutes govern the disposition of this cause.

 The Hospital brings forth eight points of error from the district court. Under points
one and two, the Hospital claims that the court erred in its calculation of prejudgment interest
because it allowed prejudgment interest to accrue on the amount of the jury verdict up to the date
of settlement, rather than on the final judgment amount obtained after reducing the jury verdict
by the credit for the settlement received by the Dunsmoors. Under points three and four, the
Hospital claims that the court erred in its calculation of prejudgment interest because it
compounded prejudgment interest. Under points five and six, the Hospital claims that the court
erred in the credit given for the settlement with the doctor-defendants because it assigned an
incorrect value to the annuity purchased for the Dunsmoors. Finally, under points seven and
eight, the Hospital claims that the court erred in the calculation of postjudgment interest because
it allowed postjudgment interest to accrue on the prejudgment interest amount included within the
final judgment. Since both parties agree that the district court erred in compounding the
prejudgment interest, points of error three and four are hereby sustained without discussion.

 The Dunsmoors bring one cross-point of error arguing that the district court should
have calculated prejudgment interest on the entire verdict amount from the date of filing until the
date final judgment was rendered, and then reduced the resulting amount by the settlement credit. 




Points 1 & 2: Calculation of Prejudgment Interest

 In the first and second points of error, the Hospital contends that the district court
erred in its calculation of prejudgment interest because it allowed prejudgment interest to accrue
on the amount of damages awarded by the jury up to the date of settlement, rather than on the
final judgment amount. The Hospital contends that the district court should have reduced the
amount awarded in the jury verdict by the credit for the settlement amount received by the
Dunsmoors before allowing prejudgment interest to accrue. We agree. 

 The prejudgment interest statute states that:



(a) Judgments in wrongful death, personal injury, and property damage cases
must include prejudgment interest. Except as provided by Subsection (b), (c),
and (d) of this section, prejudgment interest accrues on the amount of the
judgment during the period beginning on the 180th day after the date the
defendant received written notice of a claim or on the day the suit is filed,
whichever occurs first, and ending on the day preceding the date judgment is
rendered.



Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(a) (Supp. 1992) (emphasis added).


 Given the clear legislative mandate that prejudgment interest accrues on the
"judgment amount," the only question before the district court in calculating the prejudgment
interest was a determination of the appropriate "judgment amount."


 

A. Determining the Judgment Amount -- Settlement Credits


 The 1987 tort reforms adopted a complicated provision regarding settling and
nonsettling defendants. See Tex. Civ. Prac. & Rem. Code Ann. § 33.012 (Supp. 1992). Under
prior law, former section 33.014 of the Civil Practice and Remedies Code provided a dollar-for-dollar credit for all settling parties unless a settling defendant was joined in the lawsuit and the
jury had determined that defendant's percentage of negligence. Civil Practice and Remedies
Code, 1985 Tex. Gen. Laws, ch. 959, sec. 1, § 33.014, at 3271 (Tex. Civ. Prac. & Rem. Code
Ann. § 33.014, since amended); see also Sanders & Joyce, supra, at 268-69. If such were the
case, the settlement functioned as a release of the portion of the judgment attributable to the
settling defendant, and the nonsettling defendants were entitled to a proportional credit. Sanders
& Joyce, supra, at 268-69.

 The comparative responsibility statute, as reformed in 1987, discards the
proportional credit provision of the old statute, maintains the dollar setoff provision, and adds a
new sliding scale provision. (3) Tex. Civ. Prac. & Rem. Code Ann. § 33.012 (Supp. 1992); 
Sanders & Joyce, supra, at 269. 

 The comparative responsibility statute states that "the amount of damages" shall be
reduced by a credit when the claimant has settled with one or more persons. Tex. Civ. Prac. &
Rem. Code Ann. § 33.012(b) (Supp. 1992). In contrast, however, the prejudgment interest statute
states that prejudgment interest accrues on "the amount of the judgment." Tex. Rev. Civ. Stat.
Ann. art. 5069-1.05, § 6(a) (Supp. 1992). This Court cannot ignore the legislature's use of the
word "judgment," rather than "damages," in the prejudgment interest statute. This Court has
stated that "the language in a statute is presumed to have been selected and used with care," and
every word is presumed to have been intentionally used with meaning and purpose. Railroad
Comm'n v. Olin Corp., 690 S.W.2d 628, 631 (Tex. App.), writ ref'd n.r.e., 701 S.W.2d 641
(Tex. 1985). 

 The amount of damages in a judgment is obtained by reducing the jury verdict by
any percentage of negligence attributable to the plaintiff(s) and then by any settlement credits due
the remaining defendant(s). See Tex. Civ. Prac. & Rem. Code Ann. § 33.012(a), (b) (Supp.
1992). Settlement credits, such as the one due the Hospital, apply "against the amount of the
verdict after any reduction in the plaintiff's recovery as a result of the plaintiff's percentage of
responsibility." Kirk P. Watson, Comparative Responsibility Under the New Civil Justice
Legislation, 51 Tex. B.J. 688, 692 (1988). 

 This issue has already been addressed by the Houston Court of Appeals in C & H
Nationwide, Inc. v. Thompson, 810 S.W.2d 259, 275 (Tex. App. 1991, writ requested). In
C & H Nationwide, the court of appeals reformed a trial court's judgment ordering prejudgment
interest to accrue on the total damages awarded by the jury verdict. Id. at 259. The court held
that prejudgment interest should accrue on the "judgment after deducting the amount of payments
made in settlement from the amount of damages found by the jury." Id. at 275 (emphasis added). 
We find this opinion persuasive.

 The Hospital argues that the Dunsmoors bargained away their right to prejudgment
interest in their settlement agreement with the doctor-defendants. We agree. Settlement
agreements should contain both compensation for past and future damages, as well as prejudgment
and postjudgment interest on those amounts. Nonsettling parties cannot affect the time frame of
settlement agreements and should not be penalized for events they cannot control.

 Therefore, we hold that any offsets or credits due the Hospital should be deducted
from the total damages awarded in the jury verdict before calculating prejudgment interest on the
remaining "judgment amount." Accordingly, the Hospital's points of error one and two are
sustained, and the Dunsmoors' single cross-point of error is overruled.



Points 5 & 6: Valuation of the Settlement Credit

 In points of error five and six, the Hospital contends that the district court erred
in the credit given it for the settlement between the Dunsmoors and the doctor-defendants. It
argues that the district court assigned an incorrect value to the annuity purchased for the
Dunsmoors.

 During the trial, the Hospital's economic expert witness testified that the present
value of the structured settlement with the doctor-defendants was $302,000.00 in cash plus
$170,816.00 for the present value of the annuity. The Hospital then attempted to introduce
additional evidence concerning the cost of the annuity after the jury had returned its verdict in
favor of the Dunsmoors. At the hearing on the Dunsmoors' motion for entry of judgment, the
Hospital introduced an affidavit showing the actual cost of the annuity to be $178,516.00, nearly
$8,000 more than the present value testimony. 

 Nonsettling defendants are entitled to a settlement credit for "the sum of the dollar
amounts of all settlements." Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b)(1) (Supp. 1992). 
"[A]ll settlements" include both cash and non-cash settlements. Id. Even though the comparative
responsibility statute does not specify how non-cash settlements should be valued, the prejudgment
interest statute suggests a valuation method. See Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(f)
(Supp. 1992). Section 6(f) states that prejudgment interest on settlement offers "for other than
present cash payment[s]" should be valued "on the basis of cost or fair market value of the
settlement offer at the time [the offer] is made." Id. 

 Since the comparative responsibility statute and the prejudgment interest statute
were passed during the same legislative session as a part of the 1987 tort reform legislation, the
statutes can be read together in order to determine legislative intent. See Henderson v. State, 758
S.W.2d 694, 695 (Tex. App. 1988, no writ). The valuation method of settlement offers in section
6(f) thus provides a reasonable basis for determining the dollar amount of non-cash consummated
settlements for purposes of the comparative responsibility statute. Consequently, the annuity
purchased for the Dunsmoors as a part of the settlement agreement with the doctor-defendants
should be valued at either the cost or fair market value of the annuity at the time the offer was
made.

 The Hospital argues instead that the value of the annuity for the purposes of the
settlement credit should be the sum of all payments which have been or will be received by the
Dunsmoors in the future. This valuation method would give the Hospital present credit for funds
to be paid in the future and is unsupported by the statutes in question. See Tex. Rev. Civ. Stat.
Ann. art. 5069-1.05, § 6(f) (Supp. 1992); Tex. Civ. Prac. & Rem. Code Ann. § 33.012 (Supp.
1992). Furthermore, this method is unworkable since the annuity is for life and the total amount
to be paid is uncertain. 

 Alternatively, the Hospital argues that the value of the annuity should be the actual
cost since it represents the actual economic benefit conferred on the plaintiff. While actual cost
is one fair and equitable valuation method, it is not the only valuation method. The trial court had
the discretion of choosing either the actual cost or the fair market value of the annuity. From the record before us, it appears that the district court had the sworn testimony
of the Hospital's economic expert that the fair market value of the annuity was $170,816.00. In
addition, at the hearing on the motion for entry of judgment, the Hospital sought to introduce an
affidavit of the actual cost of the annuity. Since one of the two accepted methods of valuation was
used for the non-cash portion of the settlement, we need not reach the question as to whether the
affidavit was proper evidence to be considered by the district court. We conclude that the trial
court did not err in exercising its discretion to base the final judgment upon the fair market value
of the annuity. The Hospital's points of error five and six are overruled.



Points 7 & 8: Calculation of Postjudgment Interest

 In points of error seven and eight, the Hospital contends that the trial court should
not have allowed postjudgment interest to accrue on prejudgment interest. The Hospital argues
that prejudgment interest should accrue on the judgment, and postjudgment interest should accrue
on the same judgment amount, exclusive of accrued prejudgment interest. We disagree.

 The courts of this state have long held that a judgment for principal and interest
may bear interest. Hagood v. Aikin, 57 Tex. 511 (1881); Miner v. Paris Exch. Bank, 53 Tex. 559
(1880); Frazier v. Campbell, 5 Tex. 275 (1849); Ligon v. E.F. Hutton & Co., 428 S.W.2d 434
(Tex. Civ. App. 1968, writ ref'd n.r.e.); International & G.N. R.R. v. Dimmitt County Pasture
Co., 23 S.W. 754 (Tex. Civ. App. 1893, no writ). Prejudgment interest becomes incorporated
into and a part of the final judgment rendered by the court, and there is no statutory exception
prohibiting interest on the entire final judgment amount. Coles v. Kelsey, 13 Tex. 75 (1854). 
Furthermore, the 1987 tort reform legislation did not alter this long-standing application of
postjudgment interest to damages found by the jury and prejudgment interest as determined by the
court. 

 Postjudgment interest is compensation allowed by law for the use or detention of
money computed from the date of rendition of judgment until the date of its satisfaction. Tex.
Rev. Civ. Stat. Ann. art. 5069-1.05, § 3(a) (1987 & Supp. 1992). An inequitable result would
occur were we to hold that postjudgment interest does not accrue on the prejudgment interest
portion of the final judgment. The Dunsmoors would then not receive compensation for the loss
of their use of the prejudgment interest amount from the rendition of judgment until the date of
its satisfaction. Furthermore, the Hospital would have no additional incentive to satisfy the
prejudgment interest portion of the judgment. The Hospital's points of error seven and eight are
hereby overruled.



MODIFICATION OF THE FINAL JUDGMENT


 Based upon our holdings on points of error one through four, the final judgment
of the district court is hereby modified. The settlement credit of $472,000.00 shall be deducted
from the verdict amount of $703,800.00, for a net monetary judgment amount of $231,800.00. 
Prejudgment interest shall accrue on that judgment amount at ten percent simple interest per
annum from October 14, 1988, to March 13, 1991. The prejudgment interest amount shall then
be added to $231,800.00, for a total final judgment amount. Postjudgment interest shall then
accrue on this total final judgment amount at the rate of ten percent per annum, compounded
annually, from March 14, 1991, to April 12, 1991, when it shall be reduced by the amount of the
Hospital's partial payment of $278,768.52. The net difference will continue accruing
postjudgment interest until the date actually paid. As so modified, the judgment of the district
court is affirmed.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Modified and, as Modified, Affirmed

Filed: May 27, 1992

[Publish]
1. Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6 (Supp. 1992); hereinafter referred to as
the "prejudgment interest" statute.
2. Tex. Civ. Prac. & Rem. Code Ann. § 33.012 (Supp. 1992).
3. "Even though the new statute drops the proportional credit provision, it still calls for
determination of the settling defendants' percentage of responsibility by the jury. Tex. Civ.
Prac. & Rem. Code Ann. § 33.003 (Vernon 1987). Apparently, this is done in order to assess
whether the plaintiff has gone over the 51%-60% threshold barring it from recovery." 
Sanders & Joyce, supra, at 269 n.253. In addition, the settling defendants' percentage of
responsibility helps determine threshold levels for the defendants' potential joint and several
liability.