**OTIS ELEVATOR CO. v. ALLEN et al.**

No. 14640.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 1, 1944.

Rehearing Denied Jan. 19, 1945.

W. B. Handley, of Dallas, for appellant.

Cantey, Hanger, McMahon, McKnight & Johnson and J. A. Gooch, all of Fort Worth, for appellee Mrs. Charles M. Allen.

Martin, Moore & Brewster, of Fort Worth, for appellee C. G. Thrash.

Buck & Kemble, of Fort Worth, for appellee Commercial Standard Ins. Co.

BROWN, Justice.

The appellant, Otis Elevator Company, entered into a written contract with Commercial Standard Insurance Company to furnish what they designate "Otis Maintenance" on the three electric passenger elevators installed in that certain building owned by the insurance company known as the "Trinity Building" in the City of Fort Worth. The contract calls for "all reasonable care to maintain the elevators in proper and safe operating condition," and the contract stipulates that the contracting company will "repair and/or replace conductor cables" and "will also examine, lubricate, adjust, repair and/or replace the following accessory equipment: car lights, fans, all signals, door operators, hangers and closers."

Said insurance company is qualified to and does write Workmen's Compensation Insurance in Texas, and being possessed of such right, it undertook to write a policy covering all of its employees engaged in the operation of and care for its said office building.

On or about September 2, 1942, Charles M. Allen, the building engineer and his assistant, C. G. Thrash, learned that one of the passenger elevators was out of repair, and Thrash called the Fort Worth office of the elevator company and asked for the elevator company's mechanic, A. E. Bree-land, who, it was alleged, customarily came on call to make or assist in making the needed repairs. It was alleged that the employee who answered Thrash's telephone call advised Thrash that Breeland was not then "in" but that she would attempt to locate him and give him the message, whereupon Thrash requested such employee to find Breeland or some other elevator company mechanic and tell him that Thrash would go on to the stalled elevator and for said mechanic to come on to the same.

It was alleged that Allen and Thrash then went to the stalled elevator and discovered that a spring was broken in one of the outer doors, and that, as was their custom, alleged to be well known to the elevator company, climbed upon the top of the elevator and began repairing same after making sure that the elevator was locked in place and had the electric switch to the current that propelled it turned off.

It was further alleged that while so engaged the said Breeland got into the elevator without making any inquiry or investigation as to the cause of same being out of repair, and without determining where Allen and Thrash might be, turned the master switch on and simultaneously started the elevator upward, causing it to ascend suddenly and in doing so crushed and killed Allen.

Mrs. Allen, surviving wife of the deceased Allen, made application in due course for workman's compensation and received such award from the above named insurance company.

Thereafter, Mrs. Allen brought the suit that is before us, against Otis Elevator Company, asking for damages on the ground of negligence. She alleged, in substance, all of the above mentioned facts and laid negligence in the following counts: (1) That the defendant's employee, who received the alleged message from Thrash was guilty of negligence in failing to tell the said Breeland that Thrash would be about the said elevator; (2) that Breeland was guilty of negligence in starting the elevator without first ascertaining where Allen and Thrash were, after he received such message, if same were given him; (3) that Breeland was negligent in starting the elevator without first determining that such movement could be made in safety, particularly as to Allen and Thrash.

She next alleged that, independently of the prior allegations, at the time of Allen's

death and long prior thereto Breeland, agent and servant of the elevator company, had been working with Thrash and Allen in repairing and the maintenance of the Trinity Building elevators that became out of repair; that there was a custom and general practice obtaining over a long period of time for Thrash and Allen to begin work on the repairing of the elevators so soon as one was reported to them to need repairs, and that on many occasions Allen and Thrash would have the elevator repaired by the time Breeland arrived, after he had been called; that such custom was known and acquiesced in by Breeland, who knew that Allen and Thrash would invariably begin working on the stalled elevator after calling Breeland to come and work on same, and that on practically all occasions Breeland had been assisted by Allen and Thrash in repairing the elevators, and that by reason of such facts Breeland knew or should have known on the occasion in question by the use of ordinary care that Allen and Thrash, either one or both of them, would be working on the stalled elevator by the time Breeland arrived on the scene; but that notwithstanding such knowledge on the part of Breeland and the facts and custom, and without using care in relation to such custom, or to ascertain the presence of Allen and Thrash, or where they might have been, although he knew or should have known by the exercise of ordinary care that they would be about such elevator, he, Breeland, stepped into the elevator, took it out of its locked and stalled condition, which was easy for Breeland to do because of his knowledge of such elevator, put same in gear, which caused it to rise suddenly and kill Allen, and that Breeland's acts were negligent.

The plaintiff pleaded the facts concerning Allen's salary, the carrying of workman's compensation insurance by Commercial Standard Insurance Company, the claim made for such insurance by her, the settlement of such claim by the insurance company, the amount paid, and alleged the right of such insurance company to a subrogation of such sum in its favor of the recovery that may be had by plaintiff.

With such a suit filed in the District Court of Tarrant County, Thrash, who was severely injured in the accident above detailed, intervened, as he was privileged to do, and brought suit against the elevator company for damages.

The above named insurance company intervened and prayed for a recovery of such sum as had been paid Mrs. Allen under her workman's compensation claim, and also such sum as it had paid Thrash on his like claim.

The defendant elevator company urged two pleas in abatement: The first, against the insurance company's intervention on the Allen claim, on the proposition that such insurance company cannot lawfully be both employer and Workmen's Compensation insurance carrier, as is apparent in the case at bar; the second plea in abatement is urged against such insurance company's intervention and against Thrash's suit, on the theory that if the first plea of intervention be not sustained, then it is made apparent that Thrash's suit is prematurely brought, in that the insurance carrier is now and was, when the suit was filed and tried, paying Thrash compensation insurance and will necessarily continue to pay same for an indeterminate period and the amount of such recovery has not been and cannot yet be made certain.

These pleas were overruled, the cause tried to a jury, and on the verdict returned Mrs. Allen was given judgment against the elevator company and the insurance company was given judgment in subrogation to the extent of the compensation insurance it paid to Mrs. Allen; Thrash was given judgment against said company and the insurance company was given judgment in subrogation to the extent of the compensation that it had paid Thrash.

There was an agreement and it affirmatively appears that the insurance company agreed that Thrash might bring his suit for damages against the elevator company and that the insurance company would only lay claim to its right of subrogation as applying to the sums already paid by it, and it waived all claims as to any future compensation that it might pay Thrash.

■■ The elevator company in appealing first presents the overruling of its two pleas in abatement as errors. So far as we are advised these pleas in abatement present questions of first impression in Texas. We do not believe there is any merit in either plea. The Workmen's Compensation Law, Article 8306 et seq., Vernon's Annotated Civil Statutes, discloses that Section 2 of Art. 8309 specifically provides:

"Any insurance company, which term shall include mutual and reciprocal companies, lawfully transacting a liability or accident business in this State shall have the same right to insure the liability and pay the compensation provided for in part 1 of this law, and when such company issues a policy conditioned to pay such compensation, the holder of such policy shall be regarded as a subscriber so far as applicable under this law, and when such company insures such payment of compensation it shall be subject to the provisions of parts 1, 2 and 4 and of sections 10, 17, 18a and 21 of part 3 of this law.

"Such company may have and exercise all of the rights and powers conferred by this law on the association created hereby, but such rights and powers shall not be exercised by a mutual or reciprocal organization unless such organization has at least fifty subscribers who have not less than 2,000 employés."

The insurance company involved in this suit is shown to be qualified to write Workmen's Compensation Insurance, and it does not fall within the exception found in the last portion of the quoted law.

We know of no reason, under the law as it exists and under the facts of the case before us, why the Commercial Standard Insurance Company should be compelled to carry Workmen's Compensation insurance on its employees who operate and work in its own building—the building that is occupied by it as its Home Offices, with some other insurance company, when it is engaged in writing the identical insurance and when it has complied with all of the provisions of the law. We do not feel disposed to attempt to cite any cases that may appear analogous or persuasive in reaching our conclusions: This is a Texas question bottomed on Texas Laws, and it is for Texas courts to decide it.

We hold that the said insurance company had and has the lawful right to issue the policy of insurance in question and that the first plea in abatement was properly overruled. As to the second plea in abatement, we are of opinion that Thrash is not compelled to wait until all compensation that is due him under the Workmen's Compensation Laws has been paid to him before he may sue the third party whom he asserts was guilty of negligence in causing his injuries.

His right as against the workmen's compensation insurance carrier is a limited one.

The law giving him such right was not intended as a vehicle that would, in all cases, give him full and complete satisfaction for the injuries he may have sustained as an employee.

It is obvious to us that the claim of this employee for workmen's compensation is something entirely apart from his cause of action against the third party whom he alleges negligently injured him when he was engaged in work for his master.

It is equally obvious to us that there is neither law nor reason to prevent this injured employee from agreeing with the workmen's compensation insurance carrier that he might bring suit against the third person charged with negligently bringing about his injuries and that the insurance carrier would continue to pay the employee such compensation as may be agreed upon or recovered, and that the insurance carrier and injured employee would and did waive all right of subrogation except that which related to and covered the exact amount of compensation that had been paid the employee.

It is clear to us that any recovery had by the employee against the third person in this suit forecloses the employee's right as against the third party and that it, with equal force, forecloses the insurance carrier's right of subrogation as against both the employee and the third party.

We are unable to see how the insurance carrier's intervention affects the rights of the third party.

Assuredly it is no concern of the third party, when the matter of the division of the recovery had against him is made by and between the plaintiff-employee and the insurance carrier, who seeks a portion of the recovery under the right of subrogation. That this right of subrogation may be changed by contract seems equally clear. Foster et al. v. Langston et al., Tex.Civ.App., 170 S.W.2d 250, 251.

Such a contract as was made by Thrash, the employee, and the insurance carrier in this case, was before the court in the case just cited and the court said: "We can see no reason why the contract between the Langstons and the Insurance Association would be illegal, void or in any way against public policy. It follows that if the contract is valid, it should be enforced and Foster and Woodlee are in no position to complain. * * * The appellants, Foster and Woodlee, do not show any injury."

■ The insurance carrier, in the case before us, is clearly estopped to claim anything further from Otis Elevator Company than the amount it has recovered in the instant suit.

■ We say, therefore, there is nothing illegal, void, or in any way against public policy in the contract and agreement made by and between the insurance carrier and Thrash, and Otis Elevator Company not being injured in any respect, it is in no position to complain.

It follows that appellant's point one to the effect that the insurance carrier could not lawfully become the employer and the insurance carrier, and that all payments made by it were voluntarily made, and that therefore it had no right of subrogation, must be overruled.

Likewise the second point that Thrash's plea of intervention and the insurance carrier's intervention for subrogation were premature because the liability of the insurance carrier to Thrash has never been finally adjudicated or determined in any of the modes provided by law, and either paid or assumed, must be overruled.

The third point urges that the trial court erred in not sustaining the defendant's exception to Mrs. Allen's petition because it failed to allege that she was the sole beneficiary under the death injuries statute, and therefore there was a failure to join all necessary parties. The proof discloses that Mrs. Allen is the only beneficiary, and we understand from the oral argument that this point has been cleared up.

Point four urges that the trial court erred in overruling defendant's motion for a directed verdict against the intervener insurance carrier on the theory that the evidence shows as a matter of law that such intervener was not an insurer of Allen's employer under the Workmen's Compensation Law, and such payments as were made to Mrs. Allen by it were voluntary and intervener had no right of subrogation.

Point five insists that the overruling of such motion was error because the payments made to Mrs. Allen are shown to be in full satisfaction of any cause of action she may have had.

What we have said in discussing the plea in abatement is our answer to these points.

■ Point six insists that the trial court erred in not sustaining defendant's motion for an instructed verdict against the plaintiff and both interveners because the evidence showed as a matter of law that both Allen and Thrash were trespassers, in that the exclusive control and possession of the elevator for maintenance and repair purposes was in defendant, and the injuries they received were not the result of the breach of any duty defendant owed either of such trespassers at such time.

We do not find anything in the contract that gives the elevator company exclusive possession and control of the elevators when they are in need of repair, and the evidence discloses that no such possession and control has ever been exercised or demanded at anytime by such company.

The mere fact that Allen and Thrash were employed in the building as engineer and assistant engineer, respectively, and the further fact that they were both employed to do certain work in connection with the elevators, and in and around same, to say nothing of the custom and practice that had grown up concerning their efforts to repair the elevators and to assist the elevator company's mechanics in making repairs, all show that Allen and Thrash were not trespassers as a matter of law, and no issue of fact touching such question was presented to the jury, or determined, or requested to be submitted.

A most comprehensive definition of a trespasser is found in Vol. 45, C.J., page 740. We cite the authority without quoting the text. The undisputed facts in the case before us show that Allen and Thrash were not trespassers, as so defined.

Not being trespassers, Breeland, agent and servant of the elevator company, owed them ordinary care at the time and under the circumstances, when they were injured.

■ Points seven and eight are that the trial court erred in overruling defendant's motion for an instructed verdict as against the plaintiff, Mrs. Allen, and the intervener, insurance company, and as against Thrash and said insurance company, because the evidence shows as a matter of law that Allen's negligence and Thrash's negligence proximately contributed to Allen's death and Thrash's injuries.

122

The jury found against such contentions as is disclosed by the verdict. There being evidence to support such finding, we hold that the evidence does not show as a matter of law that Allen and Thrash were guilty of contributory negligence, proximately causing the accident from which they suffered.

The question of whether or not Allen and Thrash used any degree of care for their own safety was one of fact for the jury to determine, and they have resolved the fact in favor of Allen and Thrash.

Finding no reversible error, the judgment is affirmed.