brandon.2 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-554-CV





GENELL BRANDON AND EARL H. STAELIN,



 APPELLANTS


vs.





AMERICAN STERILIZER COMPANY,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 403,981, HONORABLE JERRY DELLANA, JUDGE PRESIDING 



 
 



 

 Genell Brandon sued American Sterilizer Company ("AMSCO") for personal
injuries resulting from toxic chemical exposures on theories of products liability, deceptive trade
practices, (1) breach of warranty, negligence, and gross negligence. The trial court granted
AMSCO's motion for directed verdict on the deceptive trade practices and express warranty
claims. The court rendered judgment on the jury's verdict for Brandon on the negligence and
products liability claims, reducing the damage award relative to the jury's findings of contributory
negligence and causation. 

 Brandon appeals the trial court's granting of AMSCO's motion for directed verdict
on her claims under the DTPA and for breach of express warranty. (2) Brandon further appeals the
trial court's denial of prejudgment interest for the period between the date of verdict and the date
of judgment, as well as the court's award of a credit to AMSCO against Brandon's judgment for
the amount exceeding the payment to Brandon by her employer's workers' compensation carrier,
National Union Fire Insurance Company ("National Union"). Finally, Brandon appeals the trial
court's allocation of attorney's fees awarded under the Texas Workers' Compensation Act. Texas
Workers' Compensation Act, 71st Leg., 2d C.S., ch. 1, § 1.01, 1989 Tex. Gen. Laws, 1, 1
(formerly Tex. Rev. Civ. Stat. Ann. art. 8308-1.01). We will affirm the trial court's judgment
as to the directed verdict, the credit to AMSCO, and the allocation of attorney's fees. We will
reform the judgment regarding the denial of prejudgment interest.



BACKGROUND


 Brandon worked at Seton Medical Center from December 1978 to October 1984,
when she was injured by exposure to certain toxic chemicals. Brandon worked as a
"cardiopulmonary equipment specialist," and part of her duties included loading hospital
equipment into two gas sterilizers that use a toxic gas known as ethylene oxide to sterilize the
equipment. Brandon was responsible for operating and monitoring the gas sterilizers. Seton
purchased the sterilizers from AMSCO in 1977, and AMSCO was responsible for their
maintenance through an annual "preventative maintenance agreement" signed by the parties. On
October 29, 1984, Brandon arrived at work to find an AMSCO maintenance person apparently
working on one of the sterilizers. After the AMSCO worker left, the sterilizer began to leak,
exposing Brandon to toxic gas.



STANDARD OF REVIEW


 A party is entitled to a directed verdict when reasonable minds can draw only one
conclusion from the evidence. Jones v. Tarrant Util. Co., 638 S.W.2d 862, 865 (Tex. 1982);
Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978). An appellate court must determine whether
any probative evidence raising a fact issue on the material questions presented exists. In making
this determination, the court must consider all of the evidence in the light most favorable to the
party against whom the verdict was instructed and disregard all evidence and inferences to the
contrary. Qantel Business Sys. v. Custom Controls, 761 S.W.2d 302, 305 (Tex. 1988) (citations
omitted); Jones, 638 S.W.2d at 865; Collora, 574 S.W.2d at 68 (citations omitted). If the
appellate court finds there is any probative evidence raising a material fact issue, it must reverse
the trial court's judgment and remand the cause for the jury's determination of that issue. Qantel,
761 S.W.2d at 304.



DISCUSSION AND HOLDING
 

Consumer Status under the DTPA


 In her first point of error, Brandon argues the trial court erred in granting
AMSCO's motion for directed verdict on her DTPA claim. The trial court held Brandon was not
a "consumer" under the relevant provisions of the DTPA. Brandon argues she qualifies as a
consumer because, even though she did not purchase the gas sterilizers, she sufficiently acquired
the sterilizers, as well as AMSCO's maintenance services, pursuant to the preventative
maintenance agreement ("PMA") when she was assigned to operate the equipment. 

 We recognize that "[t]he purpose of the DTPA is the protection of consumers from
deceptive trade practices, and the act is to be liberally construed to achieve this underlying goal." 
Star Houston, Inc. v. Kundak, 843 S.W.2d 294, 297 (Tex. App.--Houston [14th Dist.] 1992, no
writ). Accordingly, we interpret the definition of consumer broadly in a wide variety of
situations. The issue before us is very difficult because it asks us to expand the definition of
consumer even further. However, for the following reasons, we conclude that the trial court
correctly found that Brandon is not a consumer under the DTPA. 

 The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by
purchase or lease, any goods or services . . . ." Tex. Bus. & Com. Code Ann. § 17.45(4) (West
1987). One can qualify as a consumer under the DTPA without actually purchasing the goods or
services at issue. Kennedy v. Sale, 689 S.W.2d 890, 892 (Tex. 1985). In Kennedy, the Texas
Supreme Court held that an employee was a consumer under the DTPA for purposes of suing on
a group insurance policy, even though his employer had purchased the policy. Id. The court
observed:



`Privity between the plaintiff and defendant is not a consideration in deciding the
plaintiff's status as a consumer under the DTPA. . . . A plaintiff establishes his
standing as a consumer in terms of his relationship to a transaction, not by
contractual relationship with the defendant. The only requirement is that the goods
or services sought or acquired by the consumer form the basis of his complaint.'



Id. at 892-93 (quoting Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 707 (Tex.
1983)). The court reasoned that, although the employee had not "sought" the policy benefits, he
sufficiently "acquired" those benefits through his coverage by the policy's provisions. Kennedy,
689 S.W.2d at 892. Furthermore, even though the employee had not purchased the policy, he did
acquire the policy benefits "by purchase, albeit a purchase consummated for his benefit by the
hospital district's Board of Managers." Id. (emphasis added); see also Wellborn v. Sears,
Roebuck & Co., 970 F.2d 1420 (5th Cir. 1992) (holding that the son of woman who bought
garage door opener was a consumer under the DTPA because a primary purpose of the purchase
was to benefit the son). 

 While the Kennedy decision gives some guidance on the issue presented herein, its
usefulness is limited by the fact that in Kennedy, the employer's primary purpose for purchasing
the insurance policies was to benefit the employee. Left unaddressed is the issue presented here,
in which an employer buys equipment primarily for the purpose of benefitting his business, but
assigns employees to use the equipment. 

 Other courts of appeals have addressed similar situations involving consumer status
under the DTPA. In Lara v. Lile, 828 S.W.2d 536 (Tex. App.--Corpus Christi 1992, writ denied),
the Laras sued the employer of a man who had run over and killed Raul Lara. The defendant
employer, Charles Lile d/b/a Raven Transport and Raven Supply ("Raven"), had contracted with
Lara's employer, Heldenfels Brothers, Inc. to deliver concrete culverts for Heldenfels to use in
a road construction project. One day, a Raven employee was moving a truck forward at the site
when he accidentally ran over Lara. In addition to a wrongful death action, the Laras sued under
the DTPA, alleging Lara's death was caused by defects and breaches of express or implied
warranties and/or representations prohibited by the DTPA. Lile filed special exceptions to the
Laras' pleadings, contending Lara was not a "consumer" under the DTPA, and the trial court
granted the exceptions. Id.

 On appeal, the appellate court affirmed on the DTPA issue, holding Lara was not
a consumer because he had not acquired the services from Raven. Id. at 542. The court
distinguished Kennedy by stating that, although a plaintiff may acquire goods or services
purchased by another for his benefit, a plaintiff may not be considered a consumer when he has
no relationship to the sales transaction involving the goods. Id. at 541-42. The court then
concluded Lara had no such connection with the services Raven provided, stating:



 The pertinent question is what was Lara to acquire or receive from Raven. 
The only service performed by the trucking firm was the transportation of culverts
from one location to another. Raven's trucking service was not sought, received
or acquired by Lara, nor did it benefit Lara. . . . The only connection between
Lara and Raven consisted of both parties performing work for Heldenfels, Lara as
an employee and Raven as a subcontractor.


 Appellants argue that Lara had a relationship to the transaction between
Heldenfels and Raven in that Lara and the other workers on the construction site
`acquired' the benefits of a safe place to work from Raven . . . [h]owever,
transportation was the primary service acquired; safety was incidental, albeit
essential. The primary service acquired was not for the benefit of the Heldenfels
employees, and was not received or acquired by them.



Id. at 542 (emphasis added).

 Another case addressing the issue of consumer status under the DTPA is Hernandez
v. Kasco Ventures, Inc., 832 S.W.2d 629 (Tex. App.--El Paso 1992, no writ). Kasco Ventures
leased a warehouse to the plaintiff's employer, Miles Transportation & Distribution Co. Kasco
also provided dock levelers to Miles to aid the loading and unloading of freight into the storage
facility. Hernandez, a warehouseman of Miles, was injured due to a malfunctioning dock leveler. 
Hernandez sued Kasco under many theories, including deceptive trade practices, alleging Kasco
was responsible for the dock levelers. The trial court granted summary judgment against
Hernandez on all theories, and Hernandez appealed. The appellate court affirmed the summary
judgment, holding Hernandez was not a consumer for purposes of the DTPA because he had not
"acquired" the dock levelers. Id. at 634.

 We agree with the analysis of the consumer status issue as set forth by the Lara and
Kasco courts. An employee is entitled to consumer status under the DTPA on claims involving
goods or services an employer purchases primarily for the employee's benefit. Kennedy, 689
S.W.2d at 892. However, when an employer purchases goods or services for the primary purpose
of benefitting that employer's business, and any use or benefit of those products extends to the
employee only incidentally, the employee does not have standing to sue under the DTPA
regarding those products. (3) Thus, the relevant issue in this cause becomes the purpose behind
Seton's purchase of the AMSCO equipment and services. Because Seton may have had different
underlying motives for purchasing the sterilizers and the PMA services, we will address these
purchases separately. (4) 

 Regarding the sterilizers, we find no merit in Brandon's contention that in operating
the equipment, pursuant to her job requirements, she "acquired" the equipment for purposes of
the DTPA. Seton's purpose for purchasing the sterilizers was to sterilize the hospital equipment
used in the everyday course of its business. Any benefit of the purchase extended to Seton, in the
form of higher efficiency, and to its patients, in the form of a safer, more sterile environment. 
Accordingly, we conclude Brandon has not met her burden in proving she was a "consumer"
under the DTPA with regard to the sterilizers. 

 Regarding the PMA maintenance services, after careful review of the record, we
disagree that these services were purchased with the intent to benefit Brandon or any other Seton
employees. Keith Lindstrom, a regional service manager for AMSCO, testified at trial that a
PMA was a scheduled series of checks and inspections on the machines to replace components
before they failed. A brochure issued by AMSCO to its customers described the PMA as a
service that:



gives your capital equipment planned maintenance service. . . . [The] PMA Service
assures you of peak equipment performance . . . whatever type of AMSCO
equipment you may own. And it offers these four outstanding benefits: [1] It frees
your maintenance personnel for other tasks. [2] It assures your professional and
technical staffs the full use of critical apparatus. [3] It helps you protect the
welfare of your patients. [4] And it maximizes the return on your capital
investment.



Because we do not have the actual PMA agreement before us, we assume that the testimony of
Lindstrom and the PMA brochure accurately describe the PMA services and are congruent with
the terms of the actual contract.

 It seems that the primary purpose of the agreement was to ensure the proper daily
functioning and efficient use of the AMSCO equipment, thus saving the hospital money and
providing it with properly sterilized equipment. Brandon has not pointed to any evidence
indicating that Seton bought the PMA services primarily for her benefit and safety, or that leaks
of the type that occurred here were even a consideration in making the purchase. Although we
view the evidence in the light most favorable to Brandon, see Qantel, 761 S.W.2d at 305; Taylor
v. GWR Operating Co., 820 S.W.2d 908, 910 (Tex. App.--Houston [1st Dist.] 1991, writ denied),
this does not dismiss her burden of proving her consumer status under the DTPA. Brandon has
failed to meet this burden. We overrule the first point of error.



Standing Requirement for Express Warranties Claims


 In point of error number two, Brandon contends the trial court erred in granting
AMSCO's motion for directed verdict on her express warranty claim. In granting the motion, the
trial court ruled Brandon did not have standing to sue AMSCO on any alleged express warranties.

 An express warranty is created "when a seller makes an affirmation of fact or a
promise to the buyer which relates to the goods sold and warrants a conformity to the affirmation
as promised." Bormaster v. Henderson, 624 S.W.2d 655, 660 (Tex. App.--Houston [14th Dist.]
1981, no writ). Brandon has failed to bring forward the terms of any alleged express warranty. 
She does not identify the express warranty nor does she refer to any part of the record where the
terms of such a warranty may be located. The only reference Brandon makes to an express
warranty is in the fact statement of her brief where, without citing the record, she refers to "the
express warranties of safety." 

 An appellant must refer the appellate court to those portions of the record that
support her argument. Catherman v. First State Bank, 796 S.W.2d 299, 304 (Tex. App.--Austin
1990, no writ). An appellate court is under no duty to make an independent search of the record
for evidence supporting an appellant's position. Most Worshipful Prince Hall v. Jackson, 732
S.W.2d 407, 412 (Tex. App.--Dallas 1987, writ ref'd n.r.e.); Golden Villa Nursing Home, Inc.
v. Smith, 674 S.W.2d 343, 351 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.) (citing
Saldana v. Garcia, 285 S.W.2d 197 (Tex. 1955)); Hale v. Ramsey, 524 S.W.2d 436, 438 (Tex.
Civ. App.--Austin 1975, no writ). Rule 74(f) of the rules of appellate procedure states:



 A brief of the argument may present separately or grouped the points relied
upon for reversal. The argument shall include: (1) a fair, condensed statement of
the facts pertinent to such points, with reference to the pages in the record where
the same may be found; and (2) such discussion of the facts and the authorities
relied upon as may be requisite to maintain the point at issue.



Tex. R. App. P. 74(f) (emphasis added). Not only does Brandon fail to discuss the alleged
express warranty sufficiently for us to determine its terms, but she also fails to cite us to any
portion of the record where such terms can be found. Accordingly, we have no way to determine
whether such a warranty even exists, much less what it promises. The appellant has the burden
to show that the record supports her contentions and to point out where in the record the matters
complained of are shown. Babcock & Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 234 (Tex.
App.--Houston [14th Dist.] 1993, no writ); Most Worshipful Prince Hall, 732 S.W.2d at 412. 
Brandon has failed to meet this burden. Point of error two is overruled.



Prejudgment Interest


 In her third point of error, Brandon contends the trial court erred by refusing to
award her prejudgment interest from the date of verdict to the date of judgment. The trial court
rendered final judgment on July 16, 1992, over four months after the jury returned its verdict on
March 6, 1992. 


 Because this action was commenced before the September 1, 1987, effective date
of Tex. Rev. Civ. Stat. Ann. art. 5069-1.05(6) (West Supp. 1994), which governs prejudgment
interest in personal injury cases filed after that date, the award of prejudgment interest is governed
by the Texas Supreme Court's holding in Cavnar v. Quality Control Parking, Inc., 696 S.W.2d
549 (Tex. 1985). O'Reilly v. Grafham, 797 S.W.2d 399, 401 (Tex. App.--Austin 1990, no writ). 

 In Cavnar, the Texas Supreme Court held that personal injury plaintiffs may
recover, as a matter of law, prejudgment interest on damages that have accrued by the time of
judgment. Cavnar, 696 S.W.2d at 554. The court reasoned that denying prejudgment interest
would thwart the primary objective of awarding damages in civil actions, which "has always been
to compensate the injured plaintiff, rather than to punish the defendant." Id. at 552. The court
continued:



A potential award of [prejudgment] interest advances the objective of encouraging
speedy compensation to victims, and ensures that the aim of obtaining a high
recovery for victims and their survivors is not defeated by a defendant's simple
strategy of delaying payment or judgment until the award is diminshed in actual
value. We agree . . . that the allowance of prejudgment interest on an unliquidated
tort claim will induce prompt defense consideration of settlement possibilities . .
. [and] is also likely to discourage delay if the case is taken to court.



Id. at 554 (citations omitted) (emphasis added).

 In accordance with Cavnar, we conclude the trial court erred in denying Brandon
prejudgment interest for the period between the time the verdict was returned and the judgment
was rendered. Because the trial court erred in computing this portion of the damages, we reform
the judgment to allow for prejudgment interest for the time period between March 6, 1992, and
July 16, 1992. See Ragsdale v. Progressive Voters League, 790 S.W.2d 77, 85 (Tex.
App.--Dallas), rev'd on other grounds, 801 S.W.2d 880 (Tex. 1990) (appellate court may reform
trial court judgment when trial court incorrectly computes damage award). Point of error number
three is sustained.



Settlement of Workers' Compensation Lien


 In her fourth point of error, Brandon contends the trial court erred by granting
AMSCO a $52,000 credit against Brandon's judgment because AMSCO paid only $30,000 to
discharge intervenor National Union's workers' compensation lien. Shortly before trial, National
Union agreed to accept $30,000 from AMSCO in settlement of National Union's original lien of
$52,000 on Brandon's claim against AMSCO. The $52,000 represented workers' compensation
benefits that National Union previously had paid to Brandon. Brandon argues that under the
Texas Workers' Compensation Act ("the Act"), (5) the trial court should have awarded the excess
$22,000 to her.

 Brandon seems to argue that National Union did not have the right to settle its
subrogration claim with AMSCO for a reduced sum before trial. However, other Texas courts
of appeals have held that an insurer's subrogration rights may be altered by contract. Otis
Elevator Co. v. Allen, 185 S.W.2d 117, 120 (Tex. Civ. App.--Fort Worth 1944), aff'd in part and
rev'd in part, 187 S.W.2d 657 (Tex. 1945); Foster v. Langston, 170 S.W.2d 250, 251 (Tex. Civ.
App.--San Antonio 1943, no writ). We conclude that National Union had the right to settle its
subrogation claim with AMSCO before trial. It follows that the trial court properly credited
AMSCO with the full $52,000. AMSCO entered into a settlement agreement with National
Union, and was entitled to the benefits of that agreement. To hold otherwise would deny AMSCO
the benefit of its bargain and would discourage the early settlement of claims.

 Brandon argues, however, that AMSCO received a windfall by receiving a credit
for the full $52,000. We disagree. In paying National Union $30,000 to settle its subrogration
claim, AMSCO was taking a risk that it would lose that entire amount if Brandon did not prevail
at trial. The fact that such a risk was involved precludes a conclusion that AMSCO received a
windfall through the $52,000 credit.

 Finally, we find no merit in Brandon's argument that she was unjustly deprived of
$22,000 of her judgment. Brandon received $52,000 in benefits from National Union, with the
condition that she reimburse it up to the full $52,000 with any money subsequently recovered at
trial. See Article 8307, § 6a(a), (c). Thus, even without the agreement between AMSCO and
National Union, Brandon would not have been entitled to the $22,000 she now seeks because it
was rightfully National Union's under the Act. Therefore, under the agreement, Brandon lost
nothing; she was in the same position she would have been had the agreement never been made. 
Furthermore, the Act was not intended to allow employees to receive a double recovery when
pursuing both its workers' compensation claim and a claim against the third party tortfeasor. See
id.; Granite State Ins. Co. v. Firebaugh, 558 S.W.2d 550, 553 (Tex. Civ. App.--Eastland 1977,
writ ref'd n.r.e.).

 We conclude the trial court did not err in granting AMSCO a $52,000 credit on the
judgment rendered. Point of error number four is overruled.



Allocation of Attorney's Fees


 In point of error number five, Brandon complains the trial court erred in its
allocation of attorney's fees between counsel for National Union and Brandon's counsel. She
argues National Union's counsel did not "actively participate" in the representation of the case and
thus should not have been allocated fifty percent of the attorney's fees under the Act. (6)

 An award of attorney's fees is within the sound discretion of the trial court, and
will not be reversed absent a clear showing of abuse of discretion. City of Austin v. Janowski,
825 S.W.2d 786, 788 (Tex. App.--Austin 1992, no writ) (citing Espinoza v. Victoria Bank & Trust
Co., 572 S.W.2d 816, 828 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.)). To
constitute an abuse of discretion, the trial court's decision must be arbitrary or unreasonable. "A
trial court's actions are unreasonable only if the court acted without reference to any guiding rules
or principles." City of Austin, 825 S.W.2d at 788 (citations omitted). In determining whether
there has been an abuse of discretion, an appellate court must review the evidence in the light
most favorable to the action of the trial court, and as long as there is some evidence supporting
the trial court's decision, it must be affirmed. Id.

 The Act provides three ways in which an attorney might recover fees based upon
a subrogation recovery: "(1) where the insurer has an attorney but he does not actively represent
it; (2) where the worker's attorney represents both the worker and the insurer; [and] (3) where
the insurer has an attorney who actively represents it and participates in obtaining a recovery." 
City of Austin, 825 S.W.2d at 789 n.2; see Hartford Ins. v. Branton & Mendelsohn, Inc., 670
S.W.2d 699, 701 (Tex. App.--San Antonio 1984, no writ) (citation omitted). Article 8307, § 6a(b)
requires a trial court to apportion attorney's fees between attorneys, "taking into account the
benefit accruing to the association as a result of each attorney's services." Article 8307, § 6a(b)
(emphasis added); City of Austin, 825 S.W.2d at 790.

 We conclude that counsel for National Union "actively participated" in
representing National Union's interests and obtaining a recovery. The record indicates that
counsel for National Union participated in the representation and recovery in the following ways:
attending at least four depositions of employees at Seton Medical Center; assisting Brandon's
counsel in obtaining information and depositions from representatives of Seton Hospital;
responding to numerous discovery requests from AMSCO; attending two mediation conferences
on behalf of National Union in order to resolve the case before trial; assisting Brandon's counsel
in responding to time-consuming discovery requests; arranging for Seton facilities to be
photographed and inspected by various experts with whom Brandon's counsel was dealing; and
ultimately reaching a settlement agreement with AMSCO before trial as to National Union's
subrogation claim.

 Based on the foregoing evidence, we conclude the trial court did not abuse its
discretion in finding that counsel for National Union actively participated in National Union's
representation and recovery. See International Ins. Co. v. Burnett & Ahders, Associated, 601
S.W.2d 199 (Tex. Civ. App.--El Paso 1980, writ ref'd n.r.e.); Lee v. Westchester Fire Ins. Co.,
534 S.W.2d 392 (Tex. Civ. App.--Amarillo 1976, no writ). Brandon argues that her counsel
performed "100% of the active representation of Ms. Brandon's interests. . . ." However, as
stated, the controlling factor is not who aided in Brandon's recovery, but rather who aided in
National Union's recovery. This is especially true in the instant cause in which the workers'
compensation carrier and the third-party tortfeasor settled before trial. Although efforts by
Brandon's counsel may well have aided National Union during its settlement negotiations with
AMSCO, we cannot say the trial court acted unreasonably or arbitrarily when it found that
National Union's counsel also contributed to the recovery. See City of Austin, 825 S.W.2d at
788. Accordingly, Brandon has not demonstrated that the trial court abused its discretion by
apportioning the attorney's fees equally between counsel for Brandon and counsel for National
Union. Point of error number five is overruled.

 We reform the judgment to award prejudgment interest to Brandon for the period
between the date of verdict, March 6, 1992, and the date of judgment, July 16, 1992. As
reformed, we affirm the trial court's judgment.



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reformed and, as Reformed, Affirmed

Filed: June 29, 1994

Publish

1.   Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann.
§§ 17.41-.63 (West 1987 & Supp. 1994) ("DTPA").
2.   Tex. Bus. & Com. Code Ann. § 2.313 (West 1986).
3.   This is not to say an employee would not have a negligence or products liability claim
against a manufacturer under appropriate circumstances, as was the situation in the instant
cause. The jury awarded damages to Brandon both on theories of negligence and products
liability. The sole issue we address here is that of a person's standing to sue under the
DTPA, and should not be confused with the substantive rights of employees, in general, to
recover for injuries sustained in their workplace due to defective products.
4.   We assume, for the sake of argument, that the sterilizers and the PMA services were
two separate products or purchases. However, we would reach the same result were we to
find that the sterilizers were the primary product purchased and the PMA services were
merely incidental benefits of that purchase. See Lara, 828 S.W.2d at 542.
5.   The relevant portions of the Act, before its repeal in 1989, read:


Sec. 6a.  Recovery from third person; subrogation; attorneys fees. . . . If
compensation be claimed under this law by the injured employee or his legal
beneficiaries, then the association shall be subrogated to the rights of the injured
employee, and may enforce in the name of the injured employee or of his legal
beneficiaries the liability of said other person, and in case the recovery is for a
sum greater than that paid or assumed by the association to the employee or his
legal beneficiaries, then out of the sum so recovered the association shall
reimburse itself and pay said costs and the excess so recovered shall be paid to
the injured employee or his beneficiaries. 


* * *



(c) If at the conclusion of a Third Party action a workman's compensation
beneficiary is entitled to compensation, the net amount recovered by such
beneficiary from the third party action shall be applied to reimburse the
association for past benefits and medical expenses paid and any amount in
excess of past benefits and medical expenses shall be treated as an advance
against future benefit payments of compensation to which the beneficiary is
entitled to receive under the Act. . . .


Act of March 28, 1917, 35th Leg., R.S., ch. 103, § 1, Tex. Gen Laws 269, 270 (formerly Tex.
Rev. Civ. Stat. Ann. art. 8307) (hereinafter "Article 8307").
6.   The relevant portion of the Act states:


(b) If the association obtains an attorney to actively represent its interest and if
the attorney actively participates in obtaining a recovery, the court shall
award and apportion an attorney's fee allowable out of the association's
subrogation recovery between such attorneys taking into account the benefit
accruing to the association as a result of each attorney's service, the
aggregate of such fees not to exceed thirty-three and one-third per cent (33
1/3%) of the subrogated interest.


Article 8307, § 6a(b).