**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
_____

**No. 98-40237**
_____

**NCNB TEXAS NATIONAL BANK,**

        **Plaintiff-Appellant/Cross-Appellee,**

        **versus**

        **PERRY BROTHERS, INC.,**

        **Defendant-Appellee/Cross-Appellant.**

_____

**Appeals from the United States District Court**
**for the Eastern District of Texas**
**(9:91-CV-181)**
_____

June 17, 1999

Before REYNALDO G. GARZA, POLITZ, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Chiefly at issue in this second appeal for an action involving NationsBank's loan to Perry Brothers and its counterclaims are the relationship of a fraud claim to the parol evidence rule; whether the loan was executed under duress; and the availability under Texas law of prejudgment interest for future economic damages. We **AFFIRM**.[2]

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2]Although we have considered all of the numerous issues presented, we discuss only the most colorable. In sum, the post-remand findings of fact are not clearly erroneous; nor do we find reversible error in the conclusions of law.

The following facts are distilled from the exhaustive, post-remand district court opinion. In addition, they are tailored to our court's opinion for the first appeal. *See NationsBank v. Perry Brothers, Inc.*, No. 97-40630 (5th Cir. Aug. 24, 1995)(unpublished).

First RepublicBank (40 separate banks in Texas, including the one at issue at Lufkin) was declared insolvent at the end of July 1988. The Federal Deposit Insurance Corporation was appointed receiver, transferred to NationsBank most of First RepublicBank's assets and all its deposit liabilities, and agreed to provide financial assistance to NationsBank to the extent that those liabilities exceeded the value of the assets. In this regard, NationsBank was required to purchase all of First RepublicBank's loans, and to administer them and seek repayment to the greatest extent possible, in order to minimize the financial assistance from the FDIC.

One of the acquired loans was with Perry Brothers, which owned and operated approximately 160 retail stores in Texas and three adjoining States. Perry Brothers was an established and valued customer of First RepublicBank Lufkin. At the time that bank failed, it and Perry Brothers were working on restructuring Perry Brothers' line of credit (loan), to include reducing the amount of available credit. In late August 1988, Perry Brothers paid a substantial portion of its loan and entered into a $3 million revolving line of credit with NationsBank (1988 Loan). Renewal of

the 1988 Loan, scheduled to mature on 31 July 1989, was in NationsBank's discretion.

Unknown to Perry Brothers, the subsequent NationsBank/FDIC November 1988 contract allowed NationsBank to transfer back to the FDIC loans assumed before 28 August 1988 (thus protecting NationsBank against risk), but *only* if NationsBank sufficiently altered the terms at renewal. Accordingly, NationsBank had an incentive to modify the terms of the 1988 Loan when it matured in July 1989.

In March 1989, an internal NationsBank "Scheduled Asset Report" reclassified Perry Brothers as a "decrease" debtor (one of four NationsBank strategies, besides "increase the line", "maintain", and "out") and reclassified the loan as a "watch" credit (the type loan which "would rarely be accepted as a new customer"). The Report recommended adopting several changes, such as requiring Perry Brothers' inventory as collateral, when the loan matured.

The next month, in April 1989, Perry Brothers and NationsBank met to discuss a violation of the net worth requirements for the 1988 Loan. NationsBank was represented by branch senior vice-president Mark Reily. In addition to waiving the net worth requirement, NationsBank (through Reily) discouraged Perry Brothers, which had inquired specifically about the bank's continuing comfort level with the loan, from seeking or investigating alternative credit. Reassured, Perry Brothers did not seek an alternative loan.

An April 1989 memo from Reily to higher NationsBank management memorialized NationsBank's discouragement of Perry Brothers from alternative financing:

> Mr. Baldwin [Perry Brothers' chairman and CEO] has indicated that several months ago First City was willing to offer a $5 [million] commitment on a secured basis. He has also indicated that if NCNB Lufkin is uncomfortable with its present position, he can solicit an offer for financing from them again. *NCNB Lufkin has requested that Mr. Baldwin not attempt [to] secure alternative financing at this time*, preferring that the company and the bank wait until the maturity date in July to assess the situation at that time.

(Emphasis added.)

Higher NationsBank officials approved both the March 1989 Scheduled Asset Report and the April 1989 waiver, but did not advise Perry Brothers of NationsBank's plans.

For the renewal in 1989, as was done in 1988, Perry Brothers and NationsBank did not begin renewal discussions until subsequent to the maturity date (31 July 1989). In August 1989, NationsBank Lufkin officers recommended renewing Perry Brothers' loan on "basically ... the same terms" as the 1988 Loan. Higher NationsBank management rejected this recommendation. Perry Brothers first learned that renewal was not imminent when NationsBank refused its mid-August 1989 request for an advance.

An August 1989 internal NationsBank memorandum noted that Perry Brothers could have obtained alternative financing based on its balance sheet and that "limited (if any)" loss exposure existed for NationsBank. On 18 September 1989, however, during renewal negotiations, NationsBank's Credit Review Committee reclassified

Perry Brothers' loan as "substandard", a credit grade implying a debtor unable to maintain orderly debt service and the need for intense effort to protect against loss. Such a precipitous drop required a "Vulnerable Borrower" status under the NationsBank/FDIC contract. Perry Brothers would be required to report this reclassification to any prospective creditors. Perry Brothers tried, but failed, to obtain alternative credit.

In September 1989, during the 1989 Loan negotiations, Perry Brothers learned for the first time of the NationsBank/FDIC November 1988 contract and the incentive it created to modify the loan.

Although Perry Brothers protested unfairness, it and NationsBank agreed in September 1989 on a new line of credit. For this 1989 Loan, the principal was reduced from $3 to $2.5 million; the maturity was shortened to six months; it was "non-readvancing" rather than revolving (i.e., limited to borrowing a cumulative $2.5 million rather than setting, as did the 1988 Loan, a limit on the total balance of indebtedness at any one time); and it was secured by Perry Brothers' otherwise-unencumbered inventory, several times the size of the loan.

The 1989 Loan, back-dated to be effective as of 31 July 1989, matured on 31 January 1990. Shortly before maturity, Perry Brothers drew down the balance; but at maturity, it repaid only the interest. Workout negotiations began.

In March 1990, NationsBank transferred the 1989 Loan to the "Special Asset Bank", a designation created by the FDIC/NationsBank

November 1988 contract, which allowed NationsBank to receive fees from the FDIC for managing a risky asset and to "put" the loan back to the FDIC. Following the transfer to the Special Asset Bank, NationsBank also refused to provide credit information to Perry Brothers' vendors, a change from previous practice.

In November 1990, as workout negotiations faltered, and *despite an oral contract not to do so*, as well as there being no written agreement permitting it to do so (at trial, the bank claimed it was proceeding under its common law right of setoff), NationsBank setoff over $1.3 million from Perry Brothers' accounts with NationsBank; blocked access for 30 days to several other accounts, with assets totaling several million dollars; and returned for insufficient funds checks totaling approximately $134,000. Needless to say, Perry Brothers' holiday season operations were dramatically impaired.

As a cumulative result of the changed credit terms and setoff, Perry Brothers delayed for several years final implementation of a computerized point-of-sale system (which allows retail stores to better determine what merchandise is selling at which locations), installing anti-theft devices, and expanding its number of stores. The acquisition of systems of such size was also hindered by terms of the 1989 Loan limiting capital expenditure.

NationsBank was aware in 1989 of Perry Brothers' capital improvement plans' dependence on steadily available credit. And, NationsBank internal documents indicate that it knew a setoff, just before the Christmas holidays, would disastrously affect Perry

Brothers, and would therefore be a good way to get Perry Brothers' attention.

In late 1990, shortly after the setoff, NationsBank sued Perry Brothers in Texas state court on the 1989 Loan balance. Perry Brothers counterclaimed in mid-1991 regarding the failure to renew the 1988 Loan, the change in its credit status, and the setoff. Later in 1991, the 1989 Loan was transferred to the FDIC, which was substituted as plaintiff. NationsBank remained a counterclaim defendant. The case was removed to federal court.

In December 1993, following a five-day bench trial, the district court rendered lengthy findings of fact and conclusions of law, amended in June 1994 to reflect the findings of a magistrate judge regarding default-prejudment-interest-rate differential, attorneys' fees, and costs. The FDIC was awarded against Perry Brothers the 1989 Loan balance (approximately $1.2 million), approximately $400,000 for a default-prejudgment-interest-rate differential, and $250,000 for attorneys' fees and costs.

On the other hand, the district court found NationsBank liable to Perry Brothers on a variety of legal theories regarding the nonrenewal of the 1988 Loan, the November 1990 setoff, and the September 1989/March 1990 credit downgrade; damages were fixed at $6 million. Also finding the 1989 Loan made under duress, the district court ordered NationsBank to reimburse Perry Brothers the above referenced default-prejudgment-interest-rate differential, fees, and costs owed the FDIC by Perry Brothers. And, the court

awarded approximately $555,000 for Perry Brothers' attorneys' fees and costs.

The FDIC and NationsBank appealed. Perry Brothers satisfied its liability to the FDIC in November 1994; its appeal was dismissed.

In August 1995, our court affirmed in part, reversed in part, vacated in part, and remanded. Regarding the 1989 nonrenewal, our court found no liability under the oral contract, promissory estoppel, and duty of good faith and fair dealing claims; but, for the fraud claim, it vacated and remanded for more specific findings on liability and what damages were caused.

Regarding the November 1990 setoff, our court affirmed liability, but remanded for more specific findings on what damages were caused, including those due to business disparagement related to the dishonored checks.

Finally, regarding the business-disparagement liability for the September 1989/March 1990 credit downgrade, our court vacated and remanded for more specific findings on liability and what damages were caused.

On remand, neither party desired to present additional evidence. The district court in July 1997 issued an 85-page opinion, including much more detailed record citations than had its first opinion. It found fraud liability for NationsBank's April 1989 reassurances of comfort to Perry Brothers and discouragement of alternative financing; added detail regarding fraud by NationsBank leading to the November 1990 setoff; assessed $3.125

million damages for the delay to the point-of-sale and theft-control systems and expansion of stores, cumulatively caused by the setoff and nonrenewal; again found the 1989 Loan executed under duress, caused by NationsBank's wrongful actions hindering Perry Brothers' ability to secure an alternative loan, and as a remedy again ordered NationsBank to reimburse Perry Brothers for the interest-rate differential and attorneys' fees and costs it had paid to the FDIC; found NationsBank liable for business disparagement related to the September 1989/March 1990 credit downgrade and dishonored checks, assessing $180,000 damages; and again awarded Perry Brothers' attorneys' fees and costs.

The amount of Perry Brothers' requested attorneys' fees, however, was divided by three to reflect only the effort spent pursuing the wrongful setoff claim, the only remaining breach of contract claim.

Finally, the district court assessed no prejudgment interest; it denied Perry Brothers' motion for reconsideration on this point.

## II.

Our well-known standard of review for a bench trial hardly needs repeating: findings of fact are reviewed for clear error; conclusions of law, *de novo*. *E.g.*, **Baldwin v. Stalder**, 137 F.3d 836, 839 (5th Cir. 1998). A finding is not clearly erroneous when

"plausible in the light of the record read as a whole".[3] **United States v. Cluck**, 143 F.3d 174, 180 (5th Cir. 1998).

As noted, on remand, the parties elected not to present new evidence. And, contrary to NationsBank's contention, the district court did not go outside the quite broad remand mandate on the first appeal.

### A.

Fraud, under Texas law, requires (1) a material misrepresentation; (2) that was false; (3) that the speaker made knowing of its falsity or made recklessly, without knowledge of its truth; (4) that the speaker intended the plaintiff to act upon; (5) that the plaintiff relied upon; and (6) that injured the plaintiff. *E.g.*, **DeSantis v. Wackenhut Corp.**, 793 S.W.2d 670, 688 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991). NationsBank asserts, first, no single officer had the requisite *scienter* to commit fraud; second, the April 1989 statements were true; third, Perry Brothers could not have justifiably relied on Reily's statements and was not

---

[3]NationsBank urges even more careful review because the district court's findings mirror those proposed post-remand by Perry Brothers. *See, e.g.*, **FDIC v. Texarkana National Bank**, 874 F.2d 264, 267 (5th Cir. 1989), *cert denied*, 493 U.S. 1043 (1990) (this court considers district court's "lack of personal attention" to factual findings in applying clearly erroneous rule). But, there is more than abundant evidence of the requisite "personal attention" by the district court, particularly in the addition of record citations to the proposed findings, reflecting great familiarity with, and consideration of, the details of the trial. Moreover, many of Perry Brothers' proposed findings and conclusions drew upon the district court's first opinion, and could be expected to be likely to be accepted again. More specific fact finding, which was translated into particularity regarding record citations, was the district court's chief task on remand; we detect no improper delegation of that task.

injured by them; fourth, such liability violates the parol evidence rule; and fifth, by accepting the 1989 Loan, Perry Brothers waived any fraud claim.

1.

In claiming that none of its officials had both the requisite *scienter* and conduct, NationsBank points particularly to Reily, who reassured Perry Brothers that renewal was likely, that the bank was comfortable, and that outside credit would not be necessary. NationsBank stresses his lack of knowledge of the falsity of such reassurances.

We need not reach Reily's culpability *vel non*, because we find no clear error in the district court's finding the requisite knowledge by higher NationsBank officials. Restated, even if Reily was unwitting, NationsBank is culpable for not correcting the known material misunderstanding Reily caused on its behalf. "Knowingly failing to disclose material information necessary to prevent a statement from being misleading is actionable as fraud under Texas law." **Rubinstein v. Collins**, 20 F.3d 160, 172 n.53 (5th Cir. 1994). NationsBank knew of Reily's statements on its behalf, knew that they were incompatible with its overall strategy, and intended that Perry Brothers not seek outside financing. Yet, it left the statements uncorrected.

2.

The 1989 Loan was *not* a renewal of the 1988 Loan. We find no clear error in the findings that the 1989 Loan was dramatically different from what Perry Brothers had been led in April 1989 to

expect, and in a way which NationsBank fully anticipated at that time.  The 1989 Loan had different terms: it had a lower balance, was non-readvancing rather than revolving, and had collateral several times the size of the loan.

3.

Likewise, we find no clear error in finding reliance and injury:  Perry Brothers justifiably regarded Reily as authorized to communicate NationsBank's comfort level and justifiably put off alternative plans as a result.  Reily's own internal memorandum characterizes the dissuasion from alternate credit as NationsBank's official act.

4.

Liability for the April 1989 fraud does not violate the parol evidence rule.  As noted, on this basis, our court reversed the district court's initial breach of contract and promissory estoppel rulings, and remanded for more specific findings and conclusions regarding fraud.  However, unlike the claims reversed on the first appeal, NationsBank's fraud liability *is not for the August/September 1989 refusal to renew, but for fraud in April 1989 regarding willingness to renew.*

The parol evidence rule, of course, is a device of substantive state law (i.e., not a rule of evidence) which bars certain claims based on prior or contemporaneous representations contrary to contractual language. *E.g.*, **FDIC v. Wallace**, 975 F.2d 227, 230 (5th Cir. 1992).   Because any August 1988 promise by NationsBank of its likelihood to renew the 1988 Loan would contradict the 1988

Loan's disclaimer of any such promise, our court on the first appeal held this precluded the breach of contract and promissory estoppel claims. However, because the April 1989 reassurances were neither prior to, nor contemporaneous with the 1988 Loan, but obviously *subsequent* to it, the parol evidence rule does not bar a fraud claim based upon such reassurances.

Likewise, a fraud claim regarding the April 1989 discussions simply does not contradict the terms of the 1989 Loan. NationsBank highlights language of the 1989 Loan which, like the 1988 Loan, disclaimed renewal obligation. The 1989 Loan disclaimer referred to the lack of a subsequent obligation (on maturity in January 1990) *to renew the 1989 Loan*. But, that disclaimer did *not* disclaim, waive, or satisfy any claim which might have existed regarding renewal of the 1988 Loan.

5.

Nor did Perry Brothers waive or abandon its fraud claim by accepting or ratifying the 1989 Loan. Because, as noted, the 1989 Loan does not contradict April 1989 reassurance regarding the lending relationship and discouragement of other financing, its ratification is irrelevant to fraud liability.

B.

As noted, on the prior appeal, our court affirmed liability resulting from the setoff, and remanded regarding what damages were caused. NationsBank urges that fraud liability for the setoff is outside the scope of the mandate. However, in affirming liability arising out of the breach of an oral contract *not* to setoff the

funds, our court found it "unnecessary to consider" other theories supporting liability. Accordingly, it was not necessary on remand for the district court to address *fraud regarding the setoff*; liability for the setoff, on another basis, was already affirmed.

C.

NationsBank maintains that the district court's remedy for duress is, first, unsupported by sufficient evidence; second, outside the remand mandate; and third, waived because outside the pretrial order.

1.

Duress exists under Texas law when an actor (1) threatens an act he has no right to perform; and (2) performs some illegal exaction or some fraud or deception, through (3) imminent restraint destroying another's free agency without present means of protection. *E.g.*, **Simpson v. MBank Dallas, N.A.**, 724 S.W.2d 102, 109 (Tex. App. 1987).

NationsBank claims that it made no wrongful threats during the negotiation of the 1989 Loan. Those negotiations were conducted in August and September 1989. However, NationsBank's improper reclassification of the Perry Brothers loan that September (during the negotiations) as "substandard" — implicitly published to any bank from whom Perry Brothers might seek alternative credit — was an ongoing wrongful act. NationsBank does not dispute the finding that this reclassification was performed in bad faith. By threatening to continue this action (and, of course, continuing it), NationsBank prevented Perry Brothers from obtaining the

- 14 -

outside financing from which NationsBank had dissuaded Perry Brothers in April 1989. Moreover, Perry Brothers could not protect itself against this wrongful act. The district court did not clearly err in finding that Perry Brothers negotiated under duress in September 1989.

NationsBank also claims subsequent ratification of the 1989 Loan by Perry Brothers. However, removal of duress conditions is required for such ratification. *E.g.*, **Green v. Hopper**, 278 S.W. 286, 287 (Tex. Civ. App. 1925). Among other things, the credit downgrade was never reversed.

## 2.

As noted, the September 1989 duress flows from the business disparagement involved in NationsBank's downgrade of Perry Brothers' credit; accordingly, it was within the remand mandate for more specific findings and conclusions regarding business disparagement. Reading our court's opinion in the light of the first district court opinion makes plain that court's reference to liability for the credit downgrade encompasses the duress predicated upon it. Duress is the only aspect of the district court's first opinion not otherwise addressed in some way in our court's opinion. Moreover, read any differently than we do here, the opinion incomprehensibly omits any rationale for ever *vacating* the duress findings.

3.

Generally, claims not listed in the pretrial order are deemed waived.  *E.g.*, *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 610 (5th Cir. 1993).

The pretrial order includes an extensive discussion of the duress issue and the associated remedies.  While the penalties due to the FDIC as such were not requested from NationsBank, the elimination of such penalties is a subset of the standard remedy for duress, to eliminate obligation entirely. *See, e.g.*, *State Nat'l. Bank of El Paso v. Farah Mfg. Co.*, 678 S.W.2d 661, 683 (Tex. App. 1984).  Of the 29 contested fact issues in the pretrial order, six related only to the elements of duress.  It asks regarding the FDIC's claims:  "If Perry Brothers executed the Note and related agreements under duress, what is the appropriate remedy?"  This obviously proposes that, if duress is established, neither the FDIC *nor* Perry Brothers (the parties to the transferred Loan) should bear the burden of these obligations.  The obvious inference is that, if duress were proved, NationsBank should be required to pay the penalties.

D.

NationsBank terms the damages awarded by the district court insufficiently specific; at odds with economic reality; and, for attorneys' fees, waived because outside the pretrial order and outside our mandate.  (Concerning the district court's post-remand methodology in awarding economic damages of $3.125 million, instead of the requested $6 million, see part II.E.2.)

1.

Regarding the claim that the damages findings are not supported by sufficiently specific evidence, it goes without saying that damages need not be proven with mathematical precision, but must only be based on the best available evidence. *E.g.*, **Patterson v. A.L. Poss & Sons, Inc.**, 705 S.W.2d 301, 303 (Tex. App. 1986).

a.

NationsBank challenges Perry Brothers' experts regarding the profitability of its new stores, noting that several had been closed, and one new store had operated at a loss. We find no clear error; such closings show only the economically reasonable practice of closing less profitable stores during an overall expansion. And, we find no clear error in the finding that expansion would be profitable for Perry Brothers.

b.

NationsBank contends that the experts' opinions on the delay to the computerized point-of-sale and theft control systems and such systems' helpfulness to Perry Brothers, as well as the terms and availability of alternative financing, are too general and speculative. Again, we find no clear error. While better evidence of the systems' value would exist had, for instance, NationsBank not hindered their installation, and regarding alternative credit, had NationsBank not prevented it, we find no clear error in the assessment of the experts' opinions as the best available evidence.

c.

- 17 -

NationsBank complains that the district court failed to apportion economic damages between the fraud and the wrongful setoff. Such apportionment was unnecessary. There is liability on both claims; therefore, at issue is only what would have happened had NationsBank not been at fault.

2.

NationsBank claims that its actions could not have delayed the Perry Brothers' planned expansion and installation of point-of-sale and theft-control systems, because, as its experts testified, a temporary credit line by its nature cannot free up money for capital expansion. We find no clear error by the district court in rejecting this approach to temporary lines of credit and in believing other experts, according to whom the availability of seasonal credit is an extremely valuable device, obviating the need to divert capital from long-term projects.

3.

NationsBank contests the method used to compute business disparagement damages based on the credit downgrade and the dishonored checks. One of Perry Brothers' experts used a percentage of annual revenues, or annual "gross profits", to calculate these damages, assuming that the damage to a firm's business reputation by a credit downgrade and dishonored checks tends to reflect a set fraction of its revenues. NationsBank misinterprets "gross profits" to refer to the company's net profit, and asserts that this figure is actually a loss. We find no clear

error by the district court in accepting Perry Brothers' expert's assessment.

4.

NationsBank challenges the award of attorneys' fees regarding the setoff as, first, outside the pleadings, pretrial order, and mandate; and second, based on a speculative fraction of total attorneys' fees.

a.

Failure to plead attorneys' fees and pretrial-order waiver were necessarily rejected on the first appeal; therefore, this point is unchallengable as law of the case. "[T]he law of the case doctrine comprehends things decided by necessary implication as well as those decided explicitly." *Conkling v. Turner*, 138 F.3d 577, 587 (5th Cir. 1998) (quotation and internal quotation marks omitted).

Despite NationsBank's contention that the attorneys' fees should never have been *assessed*, because the issue was not in the pretrial order, our court held that "causation and damages, *including the damages awarded pursuant to the recommendation of the magistrate judge*, must be specifically linked to the predicate for liability" (emphasis added). The prior panel characterizes such findings on causation as a sufficient condition for these damages, but if pretrial-order waiver were still a live issue, this would not be so. That the panel implicitly rejected the contention comports with its remand instructions; the district court correctly dealt only with the questions presented for resolution on remand,

- 19 -

ignoring NationsBank's reiterated pleas of waiver and the inadequacy of pleadings.[4]

### b.

Concerning the fraction of attorneys' fees attributable to the wrongful setoff, we find no clear error. The fraud and setoff claims were too tangled for any better measure of attorneys' fees than to estimate reasonably the ratio of work spent on the setoff. Work on the extent of damages, for instance, would be relevant to both predicates of liability.

### E.

Perry Brothers cross-appeals the denial of prejudgment interest on its economic damages. Such interest was denied in the district court's first opinion, which Perry Brothers did not cross-appeal. Without an intervening change, the issue is waived. *Brooks v. U.S.*, 757 F.2d 734, 739 (5th Cir. 1985). However, Perry Brothers urges, first, Texas law has changed; second, elapsed time had rendered all damages past.

Of course, we apply state prejudgment interest law, because it substantively defines litigants' rights rather than procedurally enforcing them. *E.g.*, *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994).

Ordinarily, we review denial of prejudgment interest for abuse of discretion. *E.g.*, *Probo II London v. Isla Santay MV*, 92 F.3d

---

[4]The same quoted language from the prior panel, of course, encompasses attorneys' fees within the remand, and sets as law of the case the propriety of the referral to the magistrate judge, which NationsBank has also questioned again.

361, 363 (5th Cir. 1996).  However, because Perry Brothers' claim of intervening change in Texas law was not presented to the district court, as explained *infra*, we review it only for plain error.

1.

We first address an ambiguity in Texas law.  Needless to say, where state law is unsettled, a federal court must make an "**Erie** guess" how the State's supreme court would decide the issue, as per **Erie R. Co. v. Tompkins**, 304 U.S. 64 (1938). *E.g.*, **H.E. Butt Grocery Co. v. National Union Fire Ins. Co. of Pittsburgh, PA.**, 150 F.3d 526, 530 (5th Cir. 1998).

Until recently, Texas prejudgment interest law was judge-made, governed by the rule of **Cavnar v. Quality Control Parking, Inc.**, 696 S.W.2d 549 (Tex. 1985).  **Cavnar** allows prejudgment interest only for damages which have accrued by the time of the judgment, not for damages either entirely future or unsegregated between accrued and future damages.  696 S.W.2d at 556.  **Cavnar** applies to economic damages in a business setting. *E.g.*, **Perry Roofing Co. v. Olcott**, 744 S.W.2d 929, 930 (Tex. 1988).

In 1987, a Texas statute, initially codified at TEX. REV. CIV. STAT. ART. 5069-1.05, since 1997 codified at TEX. FIN. CODE 304.103-.104, modified the prejudgment interest rule in wrongful death, personal injury, and property damage cases.  For such cases, that statute changed the date from which prejudgment interest runs, allowed prejudgment interest for still-future damages, and made several other changes.

On 16 January 1998, after the district court on remand denied prejudgment interest, and less than two weeks before it denied reconsideration, *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998), held that, although the statute applied only to wrongful death, personal injury, and property damage cases, the statutory date for the running of prejudgment interest would inform the broader common law applying to economic damages, modifying *Cavnar* in this respect. It held that its rule would apply to judgments issued after 11 December 1997 and any other case in which the issue was preserved. 962 S.W.2d at 533.

Neither *Johnson & Higgins*, nor any other contention that future damages are entitled to prejudgment interest, was brought to the attention of the district court on remand. Perry Brothers conceded at oral argument that this omission was, at least in part, its strategic decision not to burden the district court with another issue in an already complicated case. Accordingly, we review only for plain error. *E.g.*, *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 272 (5th Cir. 1998).

Concerning *Cavnar's* expansion of prejudgment interest, *Johnson & Higgins* notes that "[i]n *Cavnar*, this Court overruled eighty-eight years of judicial precedent", 962 S.W.2d at 528, and uses the statute to *limit* the prejudgment interest allowed by *Cavnar*, commenting that under the statute, "the time period during which prejudgment interest accrues is shorter than under *Cavnar*", 962 S.W.2d at 529. Accordingly, we cannot infer that the *Johnson*

- 22 -

*& Higgins* court would use the same statute to overrule *Cavnar* to greatly *expand* the availability of prejudgment interest. The desired inference is neither clear nor obvious; therefore, there was no plain error. *E.g.*, **U.S. v. Ulloa**, 94 F.3d 949, 952 (5th Cir. 1996) (plain error must, *inter alia*, be clear or obvious).

2.

Alternatively, Perry Brothers urges that its damages are now entirely accrued; that, therefore, even under **Cavnar** it is entitled to prejudgment interest.

As noted, economic damages were based on an estimate of profits which would have resulted from the growth and systems installation delayed by NationsBank. Perry Brothers' experts apportioned the damage over several years, including 1999. Based on its consideration of the evidence, but without explanation, the district court reduced the experts' estimate from nearly $6 million to $3.125 million. Perry Brothers suggests that, in so reducing the damages, the district court was confining them to their early years, rather than expressing doubt regarding their size.

But, at least one reasonable interpretation of the economic damage award is that it covers the same time frame as the expert opinions, but pursuant to the district court's considered judgment, assesses less damage in each year. This interpretation is confirmed, of course, by the district court's order denying prejudgment interest in the face of the contention that it represents entirely past damages.

III.

- 23 -

Accordingly, the post-remand judgment is

*AFFIRMED.*